# DIDRICK J. OLSON v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

July 3, 1914.

Nos. 18,587—(129),

**Action for false representations by vendor.**

1. A vendee in an executory contract for the sale of land cannot maintain an action for damages for false representations, when it appears that he has failed to make the stipulated payments and by reason thereof the vendor has lawfully terminated the contract.

**Forfeiture of instalments paid before cancelation — proximate damages.**

2. The forfeiture of instalments paid before the cancelation is the result of the terms of the contract, and the loss to the vendee therefrom is no part of the proximate damages resulting from the false representations.

**Money received.**

3. The pleadings herein cannot be construed to state a cause of action as for money had and received.

Action in the district court for Hennepin county to recover $1,440. Defendant's motion for judgment on the pleadings was granted, Molyneux, J. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*L. O. Rue,* for appellant.

*Emerson Hadley,* for respondent.

Holt, J.

Plaintiff, the vendee in an executory contract for the purchase of certain lands, seeks by this action to recover damages for the vendor's misrepresentations concerning its quality and character which induced plaintiff to enter the contract. The court gave defendant judgment on the pleadings, and plaintiff appeals.

These facts appear from the pleadings: On April 18, 1910, the parties hereto entered a written contract whereby defendant agreed

[1] Reported in 148 N. W. 67.

to sell and convey 320 acres of land in Custer county, Montana, to plaintiff, for which he agreed to pay $4,640, also the taxes thereafter, and to break and cultivate a portion of the land after the first year. One-tenth of the purchase price, or $464, was paid when the contract was delivered, and annually thereafter for 10 years plaintiff was to pay $417 of the principal and the interest on the purchase price remaining unpaid. Plaintiff made no further payment of either principal, interest, or taxes, nor did he cultivate any part of the land. On July 22, 1913, when there was past due and unpaid more than $2,000 upon the contract, defendant served upon plaintiff a statutory notice to terminate the same. The contract contains a provision that the vendee's default annuls and terminates the agreement if the vendor so elects, in which event the payments made are forfeited. Plaintiff did not by payment, or tender of the amount due, attempt to prevent the cancelation of the contract or the forfeiture of the one payment made, but instead, upon the twenty-ninth day after the service of this notice, brought this action. The misrepresentations of defendant, plaintiff's reliance thereon inducing him to enter the bargain, and his ignorance of the truth are fully and sufficiently pleaded and must be accepted as true, likewise the allegation of damages, namely, that the land in its actual as distinguished from its represented condition was not worth more than $3,200, whereas plaintiff had agreed to pay for it $4,640 and that consequently his damages are $1,440.

This appeal presents the question whether a vendee in an executory contract for the conveyance of land may recover damages for the vendor's misrepresentations respecting the character of the land where it appears that, after the vendee's default in making the required payments, the vendor was permitted to terminate the contract by statutory notice, without any effort of the vendee to perform or keep the contract in force. At the outset it is to be noted that the action is not for rescission. For the deception practiced upon him plaintiff might seek redress in two ways: He could rescind and recover what he had parted with, or he could retain what he obtained, and recover damages for its being of less value than the amount paid or agreed to be paid therefor. Choosing

the first means wiping out the contract from its inception, while proceeding under the second is a binding determination to abide by the contract in all its terms, except that the consideration paid or agreed to be paid may, in effect, be lessened by the amount of the recovery. The two remedies are inconsistent, therefore the selection of one will not entitle the vendee in that proceeding to recover what might have been obtained under the other. Warvelle, Vendors, § 934. Strong v. Strong, 102 N. Y. 69, 5 N. E. 799.

Appellant makes a plausible argument to this effect: The moment the contract induced by defendant's false representations was made, a cause of action arose in plaintiff's favor, and the subsequent conduct of either party in respect to their contract obligations cannot affect or destroy this cause of action. Plaintiff agreed to make certain payments, defendant accepted the promise to make them, it had the right to enforce the promise and need not have cancelled the contract. In short, plaintiff maintains that this suit for damages is independent of defendant's remedies upon or under the contract, and remains to plaintiff no matter what course plaintiff may pursue relative to the contract.

As above stated, when this suit was brought there was past due and unpaid under the terms of the contract more than the damages plaintiff claims. And further, when the pleadings were closed, plaintiff had suffered the contract to be terminated and cancelled because of his failure to make any of these overdue payments. For such failure both the statute, section 8081, G. S. 1913, and the contract provide for a cancelation. The contract is legally terminated. Defendant cannot now enforce the payment of the purchase price for this land. Warren v. Ward, 91 Minn. 254, 97 N. W. 886. And it ought also to follow that plaintiff has no contract upon which to predicate damages. There is no longer any property received or to be received by plaintiff, the value of which could be deducted from the agreed purchase price. It cannot be that a person may enter a contract to buy property for a large sum to be thereafter paid, never make the payments agreed upon, suffer the other party to cancel the contract by reason of the default, and then sue and recover heavy damages for deceit, inducing him to buy property which he

never saw fit to accept or pay for. Before damages may be recovered for not receiving as good property as was bought, it must appear that the property was accepted so that there remains an obligation to pay the purchase price. Here the property is not taken, and there is now no obligation either to accept or pay for it. In this state no recovery is permitted for loss of the bargain as such in actions for deceit. The measure of damages therein is the difference between the price paid and the value of the property bought. Reynolds v. Franklin, 44 Minn. 30, 46 N. W. 139, 20 Am. St. 540; Stickney v. Jordan, 47 Minn. 262, 49 N. W. 980; Wallace v. Hallowell, 56 Minn. 501, 58 N. W. 292; Nelson v. Gjestrum, 118 Minn. 284, 136 N. W. 858. It would seem to follow that, the contract being cancelled and the property still in the seller, there is no basis upon which to compute damages in this action. We think an action for false representation in the sale of property cannot be maintained, unless the contract has been carried out by the purchaser, or it still remains in force so that he may be compelled to take the property and pay the agreed price, except as reduced by damages sustained from the fraud.

Appellant confidently relies on Stearns v. Kennedy, 94 Minn. 439, 103 N. W. 212. Language there used when considered without regard to the facts of that case may lend plausibility to plaintiff's contention. However, it is apparent that no departure is there made from the previously adopted rule concerning the measure of damages in cases like the present. The contract like the one here involved was executory. But it is to be observed that, although there had been a default by the vendee, and an attempt by the vendor to forfeit the contract by reason thereof, the default was removed before the forfeiture could take effect, so that no instalment was due at the time of the trial, although a large amount of the purchase price was still unpaid. So long as a contract remains in force, it may be assumed that the parties are able to perform according to its terms and will so do at the appointed time. It is also to be noted that Chief Justice Start calls attention to the fact that the vendee in Stearns v. Kennedy, supra, in addition to not being in default, was in possession of the property; there was no suggestion of insolvency; he had paid all

there was due and was under obligation to pay the balance. Further, it is intimated that if, as here, it had appeared that more was due and unpaid to the vendor than the damage sustained by the vendee, the damage might equitably be applied on the amount due. Applebee v. Rumery, 28 Ill. 280, was an action for deceit in the sale of a horse, wherein an instruction was held erroneous which charged that no recovery could be had, unless it was proven that the purchase price was paid in cash when the horse was delivered. It appeared that promissory notes were given. The court says: "The giving of the two promissory notes was a sufficient consideration; nor could the defendant defeat the right of the plaintiff to recover, by showing that the notes were still in his hands unpaid; though it may be that he might, upon a proper notice, bring the notes into court and offer to surrender them in mitigation of the damages to that extent, but we will not now affirm that even this could be done." The case is not an authority upon the facts here, where the property was never accepted and the contract wholly cancelled. Neither is Eames v. Morgan, 37 Ill. 260, cited by appellant, which was an action to recover the value of wood delivered to the defendant therein in payment of a lot agreed to be conveyed to the plaintiff, it being alleged that the delivery of the wood was induced by the fraudulent representation of the defendant that the lot was free from incumbrances and good title could be conveyed, whereas the title was lost through the incumbrances and never conveyed to the plaintiff. A careful reading of Weaver v. Shriver, 79 Md. 530, 30 Atl. 189, cited in Stearns v. Kennedy, supra, and also by appellant, in support of his contention, will indicate that the principles there stated do not support recovery on the facts here appearing.

But it is said, through defendant's false representations plaintiff was induced to part with $464, and a recovery should be allowed for that amount if for no greater. We have pointed out that he could have avoided this loss by rescission. He rejected that remedy and selected the one by which he affirmed the terms of his contract. The loss of this money is in no sense naturally or proximately due to the misrepresentations of which he now complains and is not part of the damages arising from receiving property inferior to that which

it was falsely represented he should obtain in the bargain. The money was paid to defendant under a contract which plaintiff by the bringing of this action elected to affirm in all its terms, notwithstanding the deceit practiced upon him. It thereby became defendant's money irrevocably. Plaintiff's failure to make the other payments stipulated in the contract forfeited all his right to the $464 paid. Fitchette v. Victoria Land Co. 93 Minn. 485, 101 N. W. 655. It is lost to plaintiff not through defendant's fraud, but through valid stipulations in a contract affirmed by plaintiff with full knowledge of the fraud.

Had plaintiff sought to recover only the money paid on the contract tainted by defendant's fraud, it might have been accomplished by an action at law for money had and received, notwithstanding defendant's cancelation of the contract. Such an action might be considered virtually the same as one for rescission and would be governed by the principles which are applied in equity suits to rescind for fraud. Brand v. Williams, 29 Minn. 238, 13 N. W. 42; Todd v. Bettingen, 109 Minn. 493, 124 N. W. 443. We do not decide, or intimate, that a defrauded vendee in an executory contract for the sale of land may not, after discovery of the fraud, entirely ignore the existence of the contract, and sue the vendor for instalments paid as for money had and received. Should the vendor in such a suit set up the defense that the money was received under a contract, we apprehend that it could be successfully met by pleading and proving that his fraud induced the contract and therefore as to the vendee it is void. See cases cited in note to Martin v. Hutton, 36 L.R.A. (N.S.) 602. But if anything is to remain of the well-established doctrine that one defrauded in a bargain has the choice of two inconsistent remedies, so that the selection of one precludes resorting to the other, we must from the pleadings determine which one of the two plaintiff has selected and hold him to it. He cannot have both. It is not to be presumed that he has attempted to do what is not permissible—cover the two. With full knowledge of the alleged fraud and of the fact that defendant had taken measures to cancel because of the three years' default, plaintiff deliberately elects to affirm the contract and use it as a basis for the recovery of heavy damages. The action is

one for damages for misrepresenting the property plaintiff agreed to buy, and no attempt should be made, nor can it be made properly, to spell out from plaintiff's pleadings, considered alone or in connection with the answer, a cause of action as for money had and received.

The judgment is affirmed.

PHILIP E. BROWN, J. (dissenting).

I dissent. Defendant admits for the purposes of this case that it induced plaintiff, by fraudulent representations, to enter into an executory contract for the purchase of real property, wherein he agreed to pay defendant therefor $1,440 more than its worth, actually then paying $464, the balance of the purchase price being payable in deferred annual instalments covering a period of 10 years.

The question is, can plaintiff recover the $464 in this action, it being conceded, under the rule in Sigafus v. Porter, 179 U. S. 116, 21 Sup. Ct. 34, 45 L. ed. 113, and our cases to like effect, that such is all he has lost by the transaction or which he could in any event recover. Defendant contends, and the court concludes, that he cannot, because of (a) the form of the action; (b) cancelation of the contract inaugurated before the action was brought and completed thereafter; (c) lack of proximate causal connection between defendant's fraud and plaintiff's loss; (d) the rule as to measure of damages.

Unquestionably, the complaint not only states a cause of action, but also, under defendant's admission, sets out facts which, if they had been seasonably acted upon, would have entitled plaintiff to a rescission of the contract and a return of the money paid. Hence if defendant's claims are sustainable, such must follow from its cancelation of the contract, or else because the law infers therefrom a deprivation of plaintiff's right of recovery. Neither of these propositions should be sustained. It is wholly inadmissible to read into the contract any right of cancelation on defendant's part for plaintiff's failure to comply with the terms thereof if tainted with fraud, so as to cut off the remedy sought, or any authority to retain plaintiff's money obtained by fraud; nor should use of the cancelation stat-

ute be allowed for such purpose. Defendant had the right, upon plaintiff's default in making deferred payments, to sever contractual relations with him, for the contract so provided, but it could not thus eliminate responsibility for its previous fraudulent conduct. If defendant, as actor, had undertaken to enforce the contract, it is clear that plaintiff could have offset his claim for damages made here, and it is equally clear that when he takes the initiative defendant should not be permitted, by statutory cancelation, to deprive him of the right to recover money it has no right to retain. But the case is not one of offset, and the fact that plaintiff was indebted to defendant under the terms of the contract, when he commenced his action, in a greater sum than he sues for, is irrelevant to the issues involved. The result to which the doctrine announced leads may readily be seen from its application to a supposititious case: A. fraudulently induces B. to enter into an executory contract for the purchase of lands at the agreed price of $30,000, and to pay $10,000 thereof, the remainder to be paid in six months. The land is worth only $5,000. The six months' period expires, leaving B. in default. B. then sues A. to recover $25,000 damages for the fraud, whereupon A. proceeds by notice to cancel the contract for default in payment, and B. does nothing in the premises. Before the cause comes on for trial the cancelation is consummated, and such is made to appear in the action. Should it be held on these facts that B. will be precluded from recovering the money actually paid merely because A. has cancelled? Or should B., in order to preserve his standing to recover back his money, be required to go on and pay A. the additional $15,-000, taking his chances of realizing upon a recovery? Or should he be held not entitled to recover in his action, and thus remediless, because he might, by use of diligence and compliance with the technical requisites thereof, have pursued the remedy of rescission and therein recovered the amount paid defendant, but did not?

In the supposed, and also the present, case, language cannot obscure the fact that defendant, after having obtained plaintiff's money through fraud, secures legal sanction to its retention, without, as I think, either legal or equitable right, merely by invoking the terms of the tainted contract. Under the facts plaintiff could have re-

covered this money in an action for money had and received—and this action should not be held for less—which lies "for money got through imposition (express or implied)," the gist of this kind of action being "that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money." Todd v. Bettingen, 109 Minn. 493, 497, 124 N. W. 443. Such action, said Chief Justice Start in Benson v. U. S. Instalment Realty Co. 113 Minn. 346, 129 N. W. 594, "can be maintained whenever one party has received or obtained possession of the money of another which in equity he ought to pay over. It is immaterial in such a case that he obtained it by fraud. Lund v. Davies, 47 Minn. 290" [50 N. W. 79]. In Northness v. Hillestad, 87 Minn. 304, 306, 91 N. W. 1112, a recovery was sustained on this ground in an action for conversion. Defendant's answer alleges no equitable circumstance entitling it to retain the payment, and it has by its act of cancelation obviated the necessity, if any, on plaintiff's part, of offering to surrender any rights obtained under the contract. In this connection it is pertinent to consider what weight a court should, in such action, give to the short cut defense here interposed.

The result reached in the majority opinion comes largely from supposed necessity of distinguishing here between actions based on affirmance and disaffirmance. While it may be said that technically plaintiff affirmed the contract by bringing this action, he should not be deemed thereby to have affirmed the fraud, which is the essence of his complaint. But, be this as it may, no rule of procedure, I think, should be allowed to bring about the result reached by the court in this case. Forms of actions should not be allowed to cover a wrong, and logic of practice should yield to justice.

"As the law is a practical science," said Allen, J., in Spade v. Lynn & Boston R. Co. 168 Mass. 285 [47 N. E. 88, 38 L.R.A. 512, 60 Am. St. 393], "having to do with the affairs of life, any rule is unwise if, in its general application, it will not, as a usual result, serve the purposes of justice."

Now as to proximate cause. Did plaintiff lose his money through defendant's fraud, which induced him to enter into the contract and to part with his money, or through his intervening failure to make

further payments after discovering the cheat? But for the latter, followed by the cancelation, there could be no doubt whatever that the loss was attributable to the former. Was he then obliged, in order to preserve the continuity of this first cause, and thus lay the foundation for this action, to continue payments and be charged with all the unfavorable inferences which, later, might be drawn from such conduct, if he attempted to assert his rights by action, to be met, furthermore, at the end of the period of payment, and after paying $1,440 more than he should, with the contention that his right of action, apparently valid, was then barred by limitations? No one should be compelled so to do as a condition precedent to recovery of money fraudulently obtained, no matter what the form of action may be. With all due respect to the opinions of my colleagues, the fundamental flaw in the decision reached lies in the holding that plaintiff was required to go on with performance of the contract, in order to maintain an action for damages sustained in its inception, when, in fact, even had he been defeated in an action for rescission on any other ground than absence of fraud, he could maintain it.

It is said that our rule as to measure of damages is an insuperable obstacle to plaintiff's recovery, because his rights in the property had been divested by cancelation before trial, thus leaving nothing by which to measure damages. But the principle underlying this rule merely limits recovery to the direct pecuniary loss sustained in the transaction, to the exclusion of expected profits. Such loss being established in the sum of $464, it is necessarily within the rule, and plaintiff should not be deprived of a recovery thereof because he might have been entitled to more had he fully performed. The greater must include the less.

I think the judgment should be reversed.

HALLAM, J.

I concur in the foregoing opinion of Justice PHILIP E. BROWN.