HENRY A. FOLLINGSTAD v. MARTIN O. SYVERSON
AND OTHERS.[1]

September 26, 1924.

No. 24,058.

**Statutory notice to cancel land contract—equitable relief of vendee.**

Where, pending an action by a vendee of real estate in possession, to recover damages from the vendor for alleged fraud inducing the contract and to have them applied in reduction of the unpaid portion of the purchase price, the vendor serves the statutory notice of cancelation of the contract, equity cannot vacate, pendente lite and by a temporary injunction, the service of the notice. But, temporarily and pending the action for fraud, it may enjoin the vendor from recording proof of the cancelation or taking any step to oust the vendee from possession.

Action in the district court for Goodhue county to recover $10,000 for fraudulent representations. Defendants having served statutory notice of cancelation of land contract, plaintiff procured an injunction pendente lite. From the order granting the writ, Johnson, J., defendants appeal. Remanded with instructions to modify the order.

*Thomas Mohn,* for appellants.

*A. J. Rockne,* for respondent.

STONE, J.

Action for damages for alleged fraud inducing a land contract which evidenced the purchase on April 19, 1920, by plaintiff from defendants, of 50 acres of Goodhue county farm land for $23,000 ($460 per acre), of which $13,000 has been paid. The balance of $10,000 fell due in 1922 and has not been paid. Plaintiff has been in possession of the premises under the contract since it was executed, and now sues defendants for damages because of alleged fraudulent representations. He claims that he has been damaged in the sum

[1]Reported in 200 N. W. 90.

of $10,000, which he asks to have offset against the unpaid purchase price.

After the action was started, defendants served notice of cancelation under the statute, section 8081, G. S. 1913. The default complained of was the nonpayment of the $10,000 which fell due on March 1, 1922, the payment of which, with interest during the 30 day period, would have reinstated the contract. Thereupon, plaintiff applied for and procured a temporary injunction restraining defendants "from proceeding further with the cancelation" and directing that it be "suspended" until the determination of this action on the merits. From the order granting the writ, this appeal is taken.

We have nothing to do with the alleged fraud perpetrated by the defendants upon plaintiff, except to recognize that the issue is pending and for determination. The injunction is but ancillary, and by the appeal there is presented, in substance, this one question: To what extent may equity interfere by injunction with the action and the rights of a vendor  after he has served the statutory notice of cancelation upon a vendee, in possession, who claims that the balance of the purchase price is unliquidated because of undetermined damages resulting from the vendor's fraud inducing the contract, which he asks to have applied in reduction of the purchase price?

The statute is permissive and to the effect that a vendor may terminate a land contract on default of the vendee. In his notice, the vendor must specify the conditions of default which give him the right to terminate. It is questionable whether that right exists if the amount remaining due is unliquidated and there is a bona fide dispute as to its amount. Pending good faith efforts to settle that question by litigation, it ought to be the law, if it is not, that a vendor has no right arbitrarily to cancel. Particularly is that true in a case where the vendee is ready to pay the balance of the purchase price as soon as its amount is determined.

The statute now has a background of judicial application for our guidance. In a proper case, in order to prevent irreparable injury to the vendee, injunction lies to restrain the service of the statutory

notice of cancelation. Freeman v. Fehr, 132 Minn. 384, 157 N. W. 587. After service of the notice a different problem is presented and in Nolan v. Greeley, 150 Minn. 441, 185 N. W. 647, it was held that, after the service of the notice, "the vendee cannot have a temporary injunction vacating the service or suspending the effect of the notice." The supporting argument was that the statute provided a strict method of foreclosing the interest of the vendee; the service of the notice was a "fact accomplished" and started the 30-day period for performance fixed by the statute; the effect of service of the notice was statutory and of legal right, and therefore not to be vacated nor its benefit taken from the vendor by judicial action. It was not held that further proceedings under the notice, such as recording proof of cancelation and proceedings to oust the vendee from his possession, cannot be enjoined pending an action, such as we have here, to ascertain whether in fact the vendor had the right to cancel—whether there existed a default on the part of the vendee, for, if there was no default, or a default other than the one specified in the notice of cancelation, the latter was without effect.

In International R. & S. Corp. v. Vanderpoel, 127 Minn. 89, 148 N. W. 895, it was pointed out that damages for fraud inducing the purchase of real estate cannot be applied upon the price unless the vendee so elects. They cannot go in reduction of payment until that election has been made. It follows from that, and this was the point of the decision, that, where the vendor has served the notice of cancelation and the time for payment thereunder has expired, the vendee cannot reinstate the contract by electing thereafter to apply his damages in reduction of the unpaid purchase price. The plaintiff here is not affected by that rule because he made his election and commenced this action to enforce it before the notice of cancelation was served.

Another case important in this connection is Olson v. Northern Pac. Ry. Co. 126 Minn. 229, 148 N. W. 67, L. R. A. 1915F, 962, where it was held that, although a contract for the sale of land may be induced by fraud of the vendor, the vendee cannot recover damages, after a statutory cancelation, even to the extent of the purchase price actually paid. Under that rule, probably the plain-

tiff vendee will have no remedy left, unless cancelation can be stayed or an equivalent status in some manner procured pending the decision of his action for fraud.

Plaintiff has affirmed his contract and asks to have his damages applied on the purchase price. Must plaintiff pay $10,000 and interest to defendants as a condition precedent to his maintenance of an action to determine his claim, which he has a legal right to assert without undue hindrance or penalty, that he does not owe that much? If he has in fact been damaged, he has a legal right to the offset. But, under the rule in the Olson case, that right will have some difficulty surviving a statutory cancelation. Apparently, if it is to be protected from destruction by the arbitrary ex parte act of the vendor, the effect of the latter must be stayed pending the action to determine whether plaintiff has been damaged, and, if so, how much.

In Olson v. Northern Pac. Ry. Co. supra, it was said that plaintiff's claim depended upon the continued existence of the contract; that, the contract being cancelled, "there is no basis upon which to compute damages." If that is the law (which personally I doubt), then in this case, if, pending plaintiff's action for fraud, defendants are permitted to cancel, the former can have no damages, for there will be no basis for their computation and no contract to which they will be referable.

This differs from the Olson case in that here the vendee is in possession, has made substantial part, and appears in readiness to make complete, performance—insisting, however, that the payment required has been lessened or wholly offset by his damage from defendant's fraud. He is now properly in court asking it to pass on that contention.

In Olson v. Northern Pac. Ry. Co. the facts were that the vendee was not in a position to claim anybody's indulgence; he had never been in possession of the premises; he was in gross and long default. He may have been a "shoe string" speculator, much disappointed at not being able to realize a big profit out of his small down payment. The result of such a situation, for obvious reasons,

should not prejudice a vendee who in good faith pays a substantial portion of the purchase price and takes actual possession of the premises. There is nothing in the Olson case preventing the disposition of this one along the lines we have chosen, which are as follows:

Under the rule of Nolan v. Greeley, supra, service of the notice of cancelation must be taken as a "fact accomplished" and we cannot now vacate it or attempt to stay its effect except that, there being doubt as to the balance due defendant vendors because plaintiff vendee may reduce it by establishing damage, and for that reason the attempted cancelation may be a nullity, it is proper to enjoin any further proceedings under the notice of cancelation and all attempts to oust plaintiff from possession or to interfere with his use of the premises pending a determination of the action for fraud.

Inasmuch as such a result will leave plaintiff in possession, it will be for the district court to determine what, if any, additional bond to require to protect defendants against waste and in their right to the rental value of the premises, in the event that plaintiff fails to prove damage, and, in consequence, there was a legal right to cancel as they have attempted to do.

We are dealing with an all too inelastic statute. It does not discriminate, as law ought to discriminate, between those who deserve its indulgence and those who have forfeited all right to it. The vendee who in good faith has made substantial payments, amounting possibly to a large portion of the purchase price, has added substantial value to the property by improvements and is in possession, may be canceled out, and possibly his entire estate forfeited, just as summarily as the speculator who has made an insignificant down payment, is not in possession and does not intend further performance unless he can make a profitable deal. The law ought not to be in that condition, but it is, and it is our duty to apply it as we find it.

However drastic the statutory procedure, it cannot be that the legislature intended equity to be entirely powerless and deprived of *all* its former beneficent jurisdiction in such matters. For ex-

ample, the legislature could not have intended to prevent the inter-
ference of equity to prevent irreparable injury to the vendee from
a cancelation that possibly might prove, as the result of *pending*
litigation, to have been unauthorized.

There must be put into the statute something more than we find
now, before the, writ of temporary injunction can be denied its
time honored office of preserving the status quo pending the deter-
mination of the legal rights of the parties. It is because we are
confident that the legislature did not intend such complete tying
of hands of equity that we are using its power here as already in-
dicated. The present use of the writ is well within the authority
of section 7889, G. S. 1913, a statute not limited by section 8081.
If the plaintiff has been defrauded, he has a right to have his dam-
age applied in reduction of what he owes defendants. He may
compel it by the instant action. For defendants, pending that ac-
tion, to record proof of cancelation or to oust plaintiff from posses-
sion, as they will do unless restrained, would be "an act in violation
of plaintiff's rights respecting the subject of the action" and tend to
make "ineffectual" a judgment that may be rendered therein.

"The whole system of equity jurisprudence proceeds upon the
ground that a party having a legal right shall not be permitted to
avail himself of it for the purposes of injustice, or fraud, or oppres-
sion, or harsh and vindictive injury." Story, Equity Jur. (14th
ed.) § 1728. If we did otherwise in the instant case than we are
doing, we would be giving to the statute an effect, by way of limit-
ing equity jurisdiction, that we cannot conceive was intended
by the legislature. It is too much the habit of vendors, the
instant their conduct is challenged by the vendee, to serve a notice
of cancelation. It is a habit that should be subjected to the con-
trol of equity, because otherwise it will frequently result in "in-
justice, or fraud, or oppression, or harsh and vindictive injury."

The contract and statutory provisions are intended to enforce
payment of whatever remains due, but until that is "legally ascer-
tained, if reasonably in doubt, there could be no just or conscion-
able ground by which it should be permitted to operate.   *   *   *

Equity will not permit a party to a contract to enforce it by means manifestly never intended and such as are clearly harsh and oppressive." Lehigh Valley Coal Co. v. Searle, 248 Pa. 385, 393, 94 Atl. 74, 77. That decision, so far as equity jurisdiction was concerned, was put upon the authority of the statement just quoted from Judge Story. This case furnishes an equally appropriate occasion for its use, particularly as it can be invoked and yet save to the vendors all their legal rights in the premises.

The case is therefore remanded with instructions to modify the order for the writ of temporary injunction and the writ itself in accordance with the views herein expressed, and with leave to the defendants to apply to the court, if so advised, for such a bond in connection with the modified temporary injunction as will protect them against waste, and insure a recovery of the rental value of the premises, in the event that their right to cancel, in the manner and for the default they are now attempting to cancel, is established.

WILSON, C. J. (dissenting.)

I dissent. Plaintiff should have restrained the service of the notice of cancelation. He did not. To now restrain the filing of the papers cannot destroy the effect of the service and nonperformance. The facts here do not call for the intervention of equity. Equity should refuse to enforce demands which the party has unreasonably delayed in asserting, but is inclined to protect one who by superior diligence has obtained a legal advantage. Plaintiff's peril was created by his own neglect. We cannot take away the advantage his adversary has gained—and legitimately so—by due attention to the case. Vigilance is often a part of the price we must pay for what we get and what we keep after it is acquired. He who neglects his interests is apt to lose them and this is the plight of the plaintiff now. Equity will not take from him who is diligent what he has secured thereby, and turn it over to him who has lost by his inaction. Equity aids only the vigilant. Dell School v. Pierce, 163 N. C. 424, 79 S. E. 687; 21 C. J. 193; Roberts

v. Hughes, 81 Ill. 130, 25 Am. Rep. 270. Equity denies relief generally to one who neglects to take care of himself. 10 R. C. L. 388. Plaintiff is in possession of the land. He defaulted on March 1, 1922, in payment of $10,000. The notice of cancelation was not served until December 29, 1923. We take judicial notice of the fact that values of Minnesota farms in the meantime dropped. This tended to magnify the claim of fraud. On January 7, 1924, this action was brought to recover damages arising from alleged fraud on the original contract. The alleged fraud relates to the values of buildings on the farm, the value of the land and its adaptability for cultivation. The true conditions must necessarily have been known to the plaintiff long before he started this action and he had a remedy for his protection, had he used it. He had the opportunity for his day in court but he failed to take advantage of it.