**D.J. ENTERPRISES OF GARRISON, INC., et al., Respondents.,**

v.

**BLUE VIKING, INC., et al., Appellants.**

No. CO–83–1972.

Court of Appeals of Minnesota.

July 31, 1984.

Review Denied Oct. 11, 1984.

Robert M. Frisbee, Edina, for respondents.

Ellen L. Maas, Jerome J. Simons, Jr., Arthur, Chapman & Michaelson, P.A., Minneapolis, for appellants.

Heard, considered, and decided by WOZNIAK, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Blue Viking appeals from the denial of its motion to vacate an injunction order earlier issued to restrain it from cancelling a contract for deed. The motion for injunction was argued before the 90-day redemption period had expired, but the injunction issued after that period. We affirm.

## FACTS

In May 1982 D.J. Enterprises purchased the Blue Goose Restaurant from Blue Viking for $725,000. D.J. Enterprises paid down $20,000 to Blue Viking, assumed a short term debt of $236,411.28, assumed long term debt of $282,004.67, and signed a contract for deed in favor of Blue Viking for the remaining $186,544.05, payable at 12% in monthly installments of $1,000. The contract for deed contained various setoff provisions relating to the rights of D.J. Enterprises to reduce amounts payable to Blue Viking by assuming additional obligations or liabilities relating to Blue Viking's ownership of the restaurant.

D.J. Enterprises took possession of the property and began to operate the business. Allegedly certain debts and other problems relating to the restaurant came to light that had not been disclosed at the time of sale. In the fall of 1982 D.J. Enterprises began to reduce monthly contract payments to Blue Viking by an amount that offset the allegedly undisclosed debts.

Six months later, on February 11, 1983, Blue Viking served D.J. Enterprises with notice of cancellation of the contract for deed. At this time D.J. Enterprises was allegedly $2,344.75 in arrears under the contract, an amount substantially less than D.J. Enterprises claimed as an offset. The notice required D.J. Enterprises within 90 days either to pay up the arrearages or to "secure an order" to enjoin cancellation.

D.J. Enterprises moved for an injunction on April 18, 1983 in Crow Wing County District Court. At the same time it filed a complaint alleging misrepresentation and requesting reformation of the contract. The judge took the motion under advisement, but did not issue an order within the 90-day redemption period which expired on May 12. The injunction was issued on June 14, 1983, and required D.J. Enterprises to post a $12,000 bond. Because the order came 123 days after the notice of cancellation had been served, D.J. Enterprises had not literally complied with the notice.

On May 13, 1983, one day after the redemption period expired and while the matter was pending in district court, Blue Viking started an unlawful detainer action in Crow Wing county court. The county court determined that Blue Viking was entitled to repossession because D.J. Enterprises had not complied with the notice of cancellation. This decision was appealed immediately to the Supreme Court by writ of prohibition. The writ was granted in July 1983.

Thereafter Blue Viking returned to district court and requested it to dissolve the June 14 injunction order. The motion was denied, giving rise to an appeal essentially on one issue.

**ISSUE**

Did the court have jurisdiction to issue an injunction beyond the 90-day redemption period given to D.J. Enterprises to secure an order?

**ANALYSIS**

In accordance with Minn.Stat. § 559.21 (1982), the notice of cancellation gave D.J. Enterprises 90 days to secure an order restraining the cancellation. In these circumstances, the district court:

> has the authority at any time prior to the effective date of termination of the contract and subject to the requirements of Rule 65 of the Rules of Civil Procedure for the District Courts ... to enter an order temporarily restraining or enjoining further proceedings to effectuate termination of the contract.

Minn.Stat. § 559.211 (1982). Blue Viking contends that the statute ought to be construed strictly so that the district court would have no authority to issue an order after the 90-day redemption period. Blue Viking relies on *Olson v. Northern Pacific Ry. Co.*, 126 Minn. 229, 148 N.W. 67 (1914) which indicates that relief may not be sought once the cancellation period expires.

■ This case is different. D.J. Enterprises petitioned for injunctive relief and filed its complaint for fraud well within the 90-day period. This situation resembles the facts in *Follingstad v. Syverson*, 160 Minn. 307, 200 N.W. 90 (1924). In *Follingstad*, the contract vendees refused to meet a $10,000 balloon payment, allegedly because of vendor misrepresentations regarding the property at the time of sale. The vendor served notice of cancellation and the vendee applied for an injunction within the redemption period. Despite the lack of statutory authorization, the district court granted the injunction. In affirming, the Supreme Court rejected the argument now put forth by Blue Viking that equity is powerless to interfere with the vested cancellation rights of a contract vendor:

> We are dealing with an all too inelastic statute. It does not discriminate, as law

ought to discriminate, between those who deserve its indulgence and those who have forfeited all right to it. The vendee who in good faith has made substantial payments, amounting possibly to a large portion of the purchase price, has added substantial value to the property by improvements and is in possession, may be cancelled out, and possibly his entire estate forfeited, just as summarily as the speculator who has made an insignificant down payment, is not in possession and does not intend further performance unless he can make a profitable deal. The law ought not to be in that condition, but it is, and it is our duty to apply it as we find it.

However drastic the statutory procedure, it cannot be that the legislature intended equity to be entirely powerless and deprived of *all* its former beneficent jurisdiction in such matters . . . .

. . . It is because we are confident that the legislature did not intend such complete tying of hands of equity that we are using its power here . . . .

*Id.* at 311–12, 200 N.W. at 92. Like the *Follingstad* vendee, D.J. Enterprises is in possession of the premises. When the injunction was issued, D.J. Enterprises had been operating the restaurant for over one year. D.J. Enterprises has paid directly to Blue Viking or has assumed its debts amounting to 75% of the purchase price of the property and could lose over one-half million dollars. In contrast, the alleged arrearages are only $2,344.75. As in *Follingstad*, D.J. Enterprises is ready to make complete performance, insisting only that its payments be lessened by the damages of Blue Viking's alleged fraud. In fact, D.J. Enterprises has been making partial payments all along. Finally, the setoff provisions in the contract for deed cast doubt on Blue Viking's statutory right to terminate at all: "(i)t is questionable whether that right exists if the amount remaining due is unliquidated and there is a bona fide dispute as to its amount." *Id.* at 308, 200 N.W. at 91. If the pending litigation eventually is decided in favor of D.J. Enterpris-

es, then the injustice of termination is manifest.

■ Conversely, Blue Viking is not prejudiced by judicial intervention. The claimed arrearages are nominal relative to the purchase price, the indebtedness assumed by D.J. Enterprises, and the amounts that D.J. Enterprises claims as an offset. Blue Viking's interests have been amply protected by the $12,000 bond. It has been put in the same position as though the injunction had been issued within the 90 days.

■ D.J. Enterprises could have followed up its petition with some prodding or possibly an application for writ of mandamus before the 90-day period expired. The effectiveness of these further measures is uncertain and does not detract from the fact that D.J. Enterprises was in good faith and had clean hands when it first applied for the injunction.

### DECISION

The whole system of equity jurisprudence proceeds upon the ground that a party having a legal right shall not be permitted to avail himself of it for the purposes of injustice, or fraud, or oppression, or harsh and vindictive injury.

Story, Equity Jur. (14th ed.) § 1728, *quoted in Follingstad*, 160 Minn. at 312, 200 N.W. at 92. We perceive in the narrow circumstances presented here the need to exercise our equity jurisdiction so as not to give the cancellation statute unwarranted effect.

We affirm.