**FIRST NATIONAL BANK OF GLENCOE/MINNETONKA, a National Banking Association, Appellant,**

v.

**William D. PLETSCH, Jr., et al., Respondents,**

**Jonathan Spar, et al., Respondents.**

**No. C9-95-1846.**

Court of Appeals of Minnesota.

Feb. 20, 1996.

Review Denied April 16, 1996.

Jeffrey H. Olson, Thorfinnson, Lucas & Olson, Eden Prairie, for appellant.

Michael J. Fitzgerald, Michael J. Fitzgerald, Chtd., Minneapolis, for William D. Pletsch, Jr., et al.

David S. Holman, John W. Ploeta, Law Offices of David S. Holman, Burnsville, for Jonathan Spar, et al.

Considered and decided by DAVIES, P.J., and CRIPPEN and KALITOWSKI, JJ.

## OPINION

CRIPPEN, Judge.

Appellant First National Bank of Glencoe seeks equitable relief after losing statutory rights to enforce its second mortgage on the home of respondents William and Kathleen Pletsch. The trial court granted summary judgment denying the requested relief, and we affirm.

## FACTS

Appellant bank held two mortgages on the home of the respondents, the Pletschs, who defaulted on both loans. The bank foreclosed under the first mortgage, which secured a loan of $95,000, by a sheriff's sale on August 2, 1994. The Pletschs' six-month redemption period on the mortgage ran through February 2, 1995. *See* Minn.Stat. 580.23, subd. 1 (1994) (setting mortgagor's redemption period). The bank held the only junior lien extant at the time of the August 2 foreclosure. Because of this, evidently, the bank neglected to protect its right to enforce its second mortgage lien by filing a Notice of Intent to Redeem under it, a step that would have operated to require as a condition of redemption by any other junior lienholder that the redeemer pay both of the bank's claims on the Pletschs' property.[1]

---

1. Under Minnesota statutory law, at the expiration of a mortgagor's redemption period all parties holding mortgages on the foreclosed property, beginning with the most senior mortgagee, are entitled to a five-day redemption period. Minn.Stat. § 580.24 (1994). Creditors may create a five-day redemption right only if they file a Notice of Intent to Redeem the mortgage within the mortgagor's redemption period. *Id.*

In a separate proceeding, the bank foreclosed on its second mortgage, which secured a loan of $42,000. The sheriff's sale for that foreclosure occurred on July 26, 1994, one week before the foreclosure of the bank's first mortgage, initiating a mortgagor's redemption period lasting through January 26, 1995.

Anticipating the expiration of their redemption rights on January 26 and facing financial circumstances such that they were unable to finance their redemption, the Pletschs took a series of actions in an attempt to preserve the future possibility of reestablishing ownership of the property. They located a benefactor, respondent Miller, willing to take a lien on the property and to redeem the property as a junior lienholder and then to lease the property back to the Pletschs with an option to repurchase. Respondent Miller loaned the Pletschs $100 in exchange for a mortgage. Evidently, Miller planned to redeem the property under the first bank mortgage after February 2, the end of the redemption period on that mortgage.[2]

In structuring their transactions on January 26, the Pletschs and Miller could have anticipated one of two possible scenarios. Under the first, the bank, as holder of the second lien on the property, would discover respondents' actions on January 26 by examining the public record of those actions. The bank would then respond by (a) filing a Notice of Intent to Redeem its first mortgage before the Pletschs' redemption period on that mortgage expired on February 2 and (b) redeeming the property under that mortgage within five days after February 2. Had the bank elected such a course of action, Miller, in order to save the property, would have had to redeem the property from the bank by paying both of the bank's lien claims.

Under the second possible scenario that could have been anticipated by respondents, the bank would sleep on its rights and neglect to redeem the first-mortgage foreclosure, thereby allowing Miller to redeem from the first mortgage at only the cost of the sum due on it. The bank's second mortgage, unredeemed, would be extinguished. *See Graybow–Daniels Co. v. Pinotti,* 255 N.W.2d 405 (Minn.1977) (stating rule of law that where property has been sold under a lien, a redemption from the sale by the holder of a junior lien will result in the elimination of any intervening lien where the holder of the intervening lien has failed to redeem under statutes giving the holder that right); *Moore v. Penney,* 141 Minn. 454, 170 N.W. 599 (1919) (same).

In fact, the second of these scenarios occurred. The bank failed to discover respondents' recorded activities on January 26 and did not redeem under its first mortgage. Miller elected not to redeem under the bank's second mortgage, and thus when Miller did redeem under the bank's first mortgage on February 10, the second mortgage was extinguished as an intervening, unredeemed lien.[3]

**2.** Respondent Miller filed a Notice of Intent to Redeem under the bank's first mortgage on January 26, the same day he purchased his mortgage and before the Pletsch's redemption period on that mortgage ended on February 2. Thus, Miller was entitled to a five-day period in which to exercise the option to redeem the property.

**3.** Respondents' January 26 mortgage transaction involved numerous steps that exaggerate its complexity. In brief, respondents anticipated possibly needing to redeem the Pletschs' home under the first bank mortgage as late as 10 days after the expiration of the first mortgage's redemption period on February 2. Further, either (a) respondents believed there were legal uncertainties about whether their redemption rights under the first bank mortgage would remain valid if they did not preserve their redemption rights on the second bank mortgage; or (b) respondents were unsure whether the need might arise under any circumstances to redeem the property under the second bank mortgage; or, (c) respondents wished to create the appearance of their intent to redeem under both mortgages so as not to alert the bank to the possibility of the second mortgage being extinguished.

In light of these various considerations, respondents maneuvered to secure their redemption rights under both bank mortgages during the five-day period from February 8 to February 13. To accomplish this end, respondents took three mortgages on the Pletsch property rather than one; the first mortgage was to respondent Jonathan Spar, the second to respondent M & M Reality, and the third to respondent Miller. In addition, respondents filed two Notices of Intent to Redeem under the first mortgage and three Notices of Intent to Redeem under the second, giving them 15 days or three five-day periods

When its second mortgage was extinguished, the bank brought an action claiming that respondents' actions of January 26 were fraudulent and that respondents had been unjustly enriched by the $42,000 value of the second mortgage. The bank requested an award of damages or alternatively an award of clear title to the Pletsch property.[4] Respondents moved for summary judgment, arguing that because the bank had two available statutory remedies, either filing a Notice of Intent to Redeem under the second mortgage or redeeming the property under its first mortgage, and failed to utilize those remedies, it could not later ask a court to set aside Miller's redemption on the equitable grounds of unjust enrichment. Finding no fraudulent actions by respondents, and agreeing with respondents' interpretation of relevant case law and statutory law governing availability of an equitable remedy under the circumstances, the trial court granted summary judgment and attorney fees in respondents' favor. We affirm.

## ISSUES

1. Is appellant bank as senior mortgagee entitled to the vacation of a junior mortgagee's redemption of mortgaged property, where appellant failed to redeem its intervening second mortgage, on the equitable ground that the redemption, resulting in eliminating appellant's intervening mortgage, unduly enriched the junior mortgagee?

2. Did the trial court abuse its discretion in ordering appellant to pay respondents' attorney fees in this action?

3. Did the trial court err in denying appellant's motion to amend its complaint to include a claim for punitive damages?

after January 26 during which to redeem under the second mortgage and 10 days or two five-day periods after February 2 during which to redeem under the first. In sum, through these transactions respondents were able to ensure that they could redeem under either or both mortgages during the period from February 8 through February 13, as found necessary. Miller then successfully redeemed the property under the first bank mortgage on February 10.

4. The bank's pleadings do not define the statutory or common law jurisdictional basis for its claim of entitlement to an award of title. It is unclear whether there is such a jurisdictional

## ANALYSIS

### 1. Mortgage Claim

Appellant recognizes that its rights were lost because of its own mistakes in failing to make a precautionary filing of a Notice of Intent to Redeem, as a second lienholder, from its first mortgage foreclosure, early in the period of the Pletschs' redemption rights, or in failing to subsequently make that filing between January 26, when respondents' mortgages were created, and February 2, when the Pletschs' redemption period on the first mortgage foreclosure expired. But the bank contends that the merits of its position are unique, entitling it to the appellate imposition of an equitable remedy as a matter of law notwithstanding available legal remedies.

■ Appellant's argument suggests that the court should make an equitable exception to the longstanding, strict rule of law that when property is redeemed by a junior mortgagee, a senior mortgagee loses its liens on the property intervening the junior lienholder's mortgage and the mortgage under which the property is redeemed unless the senior mortgagee preserves the right to enforce those intervening mortgages by redeeming under them, which it may do under Minn. Stat. § 580.24 by filing a Notice of Intent to Redeem with respect to the mortgages during the mortgagor's redemption period on the senior mortgage foreclosure. *Graybow–Daniels Co. v. Pinotti*, 255 N.W.2d 405 (Minn.1977); *Moore v. Penney*, 141 Minn. 454, 170 N.W. 599 (1919); *Parke v. Hush*, 29 Minn. 434, 13 N.W. 668 (1882); *Pamperin v. Scanlan*, 28 Minn. 345, 9 N.W. 868 (1881).[5]

basis. *See* Minn.Stat. § 559.01 (1994) (stating that only persons in personal possession of property, having a tenant on property, or claiming title to unoccupied or vacant property may bring action to determine adverse real property claims). The trial court does not address this uncertainty, and in light of our disposition of appellant's claims we need not address it either.

5. Minn.Stat. 580.24 states the redemption rights of succeeding lienholders. The statute provides that a subsequent lienholder redeems by paying the amount paid earlier lienholders who have foreclosed or redeemed "and all liens prior to the lienholder's own held by the person from whom

The fundamental rule of *Graybow–Daniels Co. v. Pinotti* provides precedent for requiring strict compliance with statutory redemption provisions in circumstances like those presented here. *Graybow–Daniels*, 255 N.W.2d at 407. In that case, a bank held three consecutive mortgages on a piece of property; Graybow held a fourth. *Id.* at 406. The bank foreclosed all three of its mortgages and, unaware of Graybow's lien, filed no Notices of Intent to Redeem with respect to those mortgages. *Id.* Graybow filed timely Notices for each of the bank's mortgages during the mortgagor's redemption period. After the redemption period ended, Graybow sought to redeem the property under the first bank mortgage for the value of that mortgage only. The supreme court held that Graybow was entitled to redeem and need only pay the first bank lien, the others having been extinguished as intervening unredeemed liens upon Graybow's redemption. *Id.* at 407 ("[W]e continue to hold that the redemption requirements of Minn. S[ta]t. 580.24 must be strictly adhered to * * *.").

Appellant attempts to distinguish *Graybow–Daniels* by arguing that the junior mortgage holder in that case was bona fide while respondents colluded and schemed to take advantage of appellant. Appellant cites *Follingstad v. Syverson* and *D.J. Enterprises of Garrison v. Blue Viking, Inc.* as authority for the proposition that equity may be applied, even where an applicable legal remedy exists, to correct the unjust enrichment of one party at another's expense. *See Follingstad v. Syverson,* 160 Minn. 307, 200 N.W. 90 (1924) (awarding equitable injunction against vendor's cancellation of contract despite controlling statutory law where, pending action by vendee to recover damages from vendor for contract-related fraud, vendor attempts to cancel the contract); *D.J. Enterprises of Garrison, Inc. v. Blue Viking, Inc.,* 352 N.W.2d 120 (Minn.App.1984) (affirming equitable injunction against vendor's cancellation of contract despite controlling statutory law where vendee files for an injunction against vendor's cancellation within the statutory period allowed for seeking judicial relief but the court fails to issue the injunction until after the statutory period has expired), *review denied* (Minn. Oct. 11, 1984).

■ Appellant's attempt to avoid the holding of *Graybow–Daniels* fails on two bases. First, the evidence does not support appellant's assertion that, unlike the *Graybow–Daniels* mortgagee, respondents acted collusively and fraudulently. Certainly, respondents could have proceeded more nobly, volunteering to pay appellant's second mortgage. But respondents chose instead to stand on their rights, paying only what had to be paid to secure redemption. The record contains no evidence that respondents made fraudulent representations to appellant, and respondents' transaction of January 26 was not a "sham" but a lawful means for satisfying the mortgage demands on the pertinent property while extending the Pletschs' opportunity for successful redemption.

Appellant contends respondents were unjustly enriched by avoiding the $42,000 second mortgage. But

> unjust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, instead it must be shown that a party was unjustly enriched in the sense that the term "unjustly" could mean illegally or unlawfully.

*First Nat'l Bank of St. Paul v. Ramier,* 311 N.W.2d 502, 504 (Minn.1981); *Iverson v. Fjoslien,* 298 Minn. 168, 213 N.W.2d 627 (1973). Appellant presented no evidence of fraudulent behavior or a sham transaction, and if respondents' actions were otherwise illegal, appellant has not shown it on the record.

Further, there is no merit in appellant's attempt to align this case with *Follingstad* and *D.J. Enterprises* rather than *Graybow–Daniels.* First, the uniqueness of the equitable claims in *Follingstad* and *D.J. Enterprises* was in part because the plaintiffs in those cases attempted to protect their rights

---

redemption is made." In spite of the general statutory reference to "all liens" that must be so paid, the Minnesota Supreme Court has upheld its historic determination that such prior lien claims are extinguished unless the holder of the liens has exercised foreclosure or redemption rights under them. *Ritchie v. Ege,* 58 Minn. 291, 297, 59 N.W. 1020, 1022 (1894).

through the available courses of legal action before seeking an equitable injunction from the court. *See Follingstad,* 160 Minn. at 307–08, 200 N.W. at 91 (vendee who stopped paying on contract had filed contract fraud action against vendor, alleging he did not owe remaining purchase price); *D.J. Enterprises,* 352 N.W.2d at 121 (vendee sought court injunction well within period allowed by statute, but injunction not ordered by court until after statutory deadline for injunction had expired). Appellant, by contrast, did not take action to protect his rights as required by the redemption statute before seeking an equitable judicial remedy.

Second, the brief statutory redemption period for cancellation of contracts for deeds at issue in *Follingstad* and *D.J. Enterprises* is unique. *Follingstad* states:

> We are dealing with an all too inelastic statute. It does not discriminate, as law ought to discriminate, between those who deserve its indulgence and those who have forfeited all right to it.

*Follingstad,* 160 Minn. at 311, 200 N.W. at 92. Foreclosure regulation tremendously burdens vendees seeking to avoid contract cancellation. The redemption statute at issue here, by contrast, permits a mortgagee to protect its rights simply by checking public records and/or filing a notice within a six-month period. Unlike the deed foreclosure statute, the mortgage redemption statute is a longstanding and workable rule of law and the equities urged by appellant have repeatedly been rejected by the supreme court, in *Graybow–Daniels* and in its precedents. *Graybow–Daniels,* 255 N.W.2d at 407 ("The statute at issue has been extant in an essentially unchanged form since 1878 * * *.").

■ *Graybow–Daniels* stands for the proposition that Minnesota courts are committed to follow strictly statutory rules governing mortgage foreclosures. We cannot arbitrarily narrow the doctrine of *Graybow–Daniels* by creating an imprecise exception to that holding for "inequitable" applications not involving illegal action. Thus, we affirm the trial court's holding that the *Graybow–Daniels* doctrine applies to defeat appellant's action as a matter of law.[6]

## 2. Attorney Fees Claim

■ The trial court granted respondents' request for $5,332 in attorney fees; appellant challenges that decision on appeal as outside the scope of the trial court's discretion. We find that, given the clarity and integrity of *Graybow–Daniels* in upholding the specific application of the redemption statute challenged here, the trial court was well within the limits of its discretion under Minn.Stat. § 549.21, subd. 2, in awarding attorney fees to respondent.

## 3. Punitive Damages Claim

In light of our disposition of appellant's substantive claim, we need not address appellant's challenge of the trial court's decision not to allow appellant's punitive damages claim.

## DECISION

The trial court's summary judgment order is affirmed; where a mortgagee of property takes no action under applicable statutory mortgage law to protect its junior mortgages, *Graybow–Daniels* applies, and intervening mortgages are extinguished upon a junior lienholder's successful redemption of the property, even where the junior lienholder acts together with the mortgagors of the property in an attempt to prevent loss of the

---

6. In another argument, appellant asserts that the three $100 mortgages executed by respondents on January 26 should be treated as one mortgage, allowing respondents one five-day redemption period rather than three and making Miller's redemption of February 10 untimely. But mortgages filed separately are presumed to be separate liens, and barring extraordinary circumstances not presented here, courts will not examine the amount of consideration or other circumstances surrounding the mortgages' creation. *See Continental Mut. Life Ins. Co. v. King,* 72 Minn. 287, 288–89, 75 N.W. 376, 377 (1898) (holding that 18 mortgages executed the same day, two days before expiration of the mortgagor's redemption period, were not "co-ordinate" but separate); *cf New England Mut. Life Ins. Co. v. Capehart,* 63 Minn. 120, 120–21, 65 N.W. 258, 259 (1895) (holding that 100 mortgages executed the same day and then transferred back to mortgagee, giving mortgagee a 500–day extension of his redemption period, were invalid).

property, so long as the junior mortgagee and mortgagors do not act illegally.

**Affirmed.**