Maynard SIEVE, Trustee, Sieve En-
terprises, Inc. Retirement Plan
and Trust, Respondent,

v.

Philip C. ROSAR, Appellant.

No. C7–00–50.

Court of Appeals of Minnesota.

July 11, 2000.

Gregory Mark Miller, Gregory M. Miller and Associates, Ltd., Minneapolis, MN, respondent.

William K. Goodrich, Randall, Dehn & Goodrich, Anoka, MN, appellant.

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Considered and decided by TOUSSAINT, Chief Judge, ANDERSON and FOLEY \*, Judges.

## OPINION

G. BARRY ANDERSON.

Appellant Philip Rosar challenges the district court's grant of summary judgment in favor of respondent Maynard Sieve. Rosar argues that Sieve did not comply with the relevant statutes regarding redemption from a mortgage foreclosure. We agree that the district court erred by concluding that Sieve substantially complied with the requirements of the redemption statute and, therefore, we reverse. But, because the district court did not reach Sieve's equitable estoppel claim, we remand the case to permit the court to make findings on that issue.

## FACTS

In September 1997, respondent Maynard Sieve loaned $35,000 to Ronald and Darlene Lantz to purchase property in Anoka County. Prior to the Sieve loan, the property was encumbered by another mortgage held by Metco Mortgage Corporation. The Metco mortgage was later assigned to Fidelity Bank.

In 1998, the Lantzes failed to make payments on both the Fidelity and Sieve loans. Accordingly, Fidelity commenced a foreclosure action. On August 20, 1998, the Anoka County Sheriff held a public sale of the property. At the sale, appellant Philip Rosar purchased the property for $60,476.69. The Lantzes made no attempt to redeem the property.

In December 1998, Sieve recorded a notice of intent to redeem the property and served the notice of intent on Rosar. Pri-

Minn. Const. art. VI, § 10.

or to the commencement of Sieve's redemption period, Sieve's attorney had numerous discussions with Rosar and his wife. In those discussions, Sieve's attorney notified Rosar that Sieve intended to redeem during his redemption period. The parties dispute whether the attorney informed the Rosars that Sieve planned to redeem directly with them as opposed to the sheriff.

Sieve's redemption period ran from February 22 to March 1, 1999. On February 19, 1999, Sieve's attorney and Rosar's wife had a telephone discussion about the form of payment for redemption. Rosar's wife informed the attorney that a certified check would be acceptable. The Rosars left the country for a vacation around February 22, 1999, and returned on March 1, 1999. Neither Rosar nor his wife ever informed Sieve or his attorney that they would be unavailable during the redemption period.

On February 25, 1999, Sieve sent a cashier's check in the redemption amount by courier to Rosar's office. Gregory Meyers, who has an office in Rosar's building, but allegedly is not an employee or agent of Rosar, signed for the envelope and eventually delivered it to Rosar when he returned from his vacation on March 2, 1999. Before and after the check was sent to Rosar, Sieve's attorney left numerous messages with Rosar's "assistants" seeking to arrange a time to complete the redemption. Rosar, then out of the country, did not respond.

After Sieve sent the redemption funds, he completed repairs on the property. Although the value of the repairs made by Sieve is disputed, the parties do not dispute that repairs were made.

In a letter dated March 9, 1999, Rosar first informed Sieve that he was returning the redemption funds because Sieve failed to meet the redemption requirements. On March 26, 1999, Sieve filed a summons and complaint seeking an order directing Rosar to accept the redemption funds. Sieve also asserted claims of unjust enrichment and misrepresentation seeking recovery of the amount due on its mortgage and the value of improvements made to the property. Both parties made motions for summary judgment. The district court granted Sieve's motion for summary judgment and allowed Sieve to redeem with the sheriff. This appeal followed.

## ISSUES

I. Did the district court err by concluding that Sieve substantially complied with the statutory requirements for redemption?

II. Can the doctrine of equitable estoppel apply for the benefit of a party who fails to comply with the redemption statute?

## ANALYSIS

■ In reviewing summary judgment, this court must determine whether there are genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The evidence must be viewed in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Questions of law, such as questions of statutory construction, are reviewed de novo. *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 702 (Minn.1999).

■ The manner in which creditors must redeem from a mortgage foreclosure sale is set by statute:

The person desiring to redeem ***shall pay to the person holding the right acquired under such sale, or for that person to the sheriff who made the sale, or a successor in office, the amount required by law for such re-***

*demption,* and shall produce to such person or officer:

(1) A copy of the docket of the judgment, or of the deed or mortgage, or of the record or files evidencing any other lien under which the person claims a right to redeem, certified by the officer in whose custody such docket, record, or files shall be, or the original deed or mortgage, with the certificate of record endorsed thereon;

(2) Any assignment necessary to establish the person's claim * * *;

(3) An affidavit of the person or the person's agent, showing the amount then actually due on the person's lien.

Minn.Stat. § 580.25 (1998) (emphasis added). The person redeeming must file these documents with the county recorder within 24 hours of the redemption. *Id.* The person or officer from whom redemption is made must complete a certificate of redemption, which also must be recorded. Minn.Stat. § 580.26 (1998). A creditor who fails to properly redeem forfeits his interest in the property. *Community Ins. Agency v. Kemper,* 426 N.W.2d 471, 474 (Minn.App.1988), *review denied* (Minn. Sept. 16, 1988).

There is no dispute that Sieve did not pay the redemption funds to Rosar or the sheriff within his seven-day redemption period. Likewise, the parties do not dispute that Sieve never showed Rosar the required documents, never recorded those documents, and never filed a certificate of redemption. The district court nevertheless ruled that Sieve had sufficiently complied with the statutory requirements because he had made a "good faith attempt" to redeem and Rosar's interest was not "materially prejudiced."

The district court was faced with what it concluded were two conflicting lines of precedent on the extent of compliance necessary under the redemption statutes. Spe-cifically, the district court was concerned with decisions holding that a redemptioner must strictly comply with the statute and a decision requiring only substantial compliance.

The statutory requirements for redemption have not changed since 1874 and, thus, even the earliest decisions speak to the issues involved in the present case. *See Tinkcom v. Lewis,* 21 Minn. 132, 134 n. 1 (Minn.1874) (setting forth the requirements for a valid redemption). *Tinkcom* provides one of the earliest, and perhaps best, statements on the extent of compliance required for redemption:

The right of redemption from sales upon foreclosure by advertisement is wholly the creature of the statute; and while we would construe the statute liberally in favor of the mortgagor and redeeming creditors, we cannot dispense with or repeal its positive terms. Merely formal deviations or irregularities may be overlooked; but there must be a substantial compliance with the express requirements of the statute, in order to [effect] a valid redemption.

*Id.* at 141.

In *Moore v. Penney,* 141 Minn. 454, 170 N.W. 599 (1919), the supreme court again touched on the redemption requirements. The court held that, in order to preserve his rights, a junior creditor must redeem from the next senior redeeming creditor, even if he was that senior creditor. *Id.* at 456, 170 N.W. at 600. Because the junior creditor in *Moore* had redeemed on his lien, the issue of compliance with the statute was not a question. *Id.* at 455, 170 N.W. at 599,. Nevertheless, the court made a statement that is central in the present dispute:

If [the creditor] elects to redeem, the statute prescribes what he must do to effect the redemption. Within a year from the date of the sale, he must give notice of his intention to redeem; and at

the time of redeeming, he must produce proof of the lien under which he makes the redemption and of the amount due thereon, and must pay the amount of the claims from which he redeems. *These statutory requirements are mandatory.*

*Id.* at 456, 170 N.W. at 600, (emphasis added).

A few years later, in *Rambeck v. La-Bree*, 156 Minn. 310, 314, 194 N.W. 643, 645 (1923), a senior creditor filed his redemption papers after the 24–hour deadline, but before the junior creditor attempted to redeem. The court, relying on *Tinkcom's* substantial compliance language, held that the senior creditor's tardiness in filing the documents did not invalidate the redemption. *Id.* at 315–16, 194 N.W. at 645. The court noted that the purpose of the requirement was to inform junior creditors of their redemption amount and that only these junior creditors could challenge noncompliance. *Id.* at 314–15, 194 N.W. at 644–45. The court held that filing the documents prior to the junior creditor's attempted redemption, absent any showing of prejudice, constituted substantial compliance with the statute. *Id.* at 314, 194 N.W. at 645.

More than 50 years later, the supreme court issued the decision that is the cornerstone of Rosar's argument. *See Graybow–Daniels Co. v. Pinotti*, 255 N.W.2d 405 (Minn.1977). There, a senior creditor held the first three mortgages and a junior creditor held the fourth. *Id.* at 406. The senior creditor failed to file notices of its intention to redeem on the second and third mortgages. *Id.* The junior creditor argued that the failure meant that the second and third mortgages were extinguished. *Id.* The supreme court, quoting and relying heavily on *Moore*, agreed, holding "that the redemption requirements of Minn.St. 580.24 must be strictly adhered to." *Id.* at 407.

Just two years later, the supreme court decided another case in which a creditor failed to timely file a notice of intention to redeem. *Remole v. Jonathan Dev. Corp.*, 277 N.W.2d 362 (Minn.1979). In *Remole*, however, the challenge was asserted by the purchaser at the foreclosure sale. *Id.* at 363. The court held that, absent a showing of prejudice, the purchaser had no standing to contest the late filing. *Id.* In so holding, the court noted that the purpose of the requirement was for the benefit on junior creditors and was not designed to benefit the purchaser. *Id.*

■ Analysis of the appellate decisions dealing with redemption leads to the conclusion that these two strains of thought are complementary rather than contradictory. Substantial compliance with the redemption requirements is all that is necessary to effect a valid redemption. While the essential elements of the statute must be strictly adhered to, failure to comply with the more formal requirements may be overlooked. Furthermore, whether a purchaser may challenge noncompliance with a particular statutory requirement depends on whether the requirement was intended for the benefit of the purchaser.

■ We turn now to the specific instance of noncompliance at issue in the present case—Sieve's failure to make payment to the proper party within the time limitation. Whether a creditor may escape the statutory requirement to make timely payment to the proper person has already been decided by the supreme court. *See In re Petition of Nelson*, 495 N.W.2d 200 (Minn.1993). In *Nelson*, property was sold under a foreclosure sale. *Id.* at 201. The mortgagor intended to redeem, but did not get a check to his attorney until the last day of the redemption period. *Id.* The mortgagor's attorney attempted to contact the purchaser's attorney to discuss delivery, but the purchaser's attorney did not return his call. *Id.* The mortgagor's attor-

ney mailed the check to the purchaser's attorney and it arrived the next day, the day after the redemption period expired. *Id.* The purchaser refused to accept the redemption, claiming it was untimely. *Id.*

The *Nelson* court held that payment received one day after the redemption period expired was untimely. *Id.* at 202. The court noted that redemption is a "strict legal right" and to comply with the requirements a mortgagor must redeem within one year of the sale. *Id.; see also State ex rel. Anderson v. Kerr,* 51 Minn. 417, 420–21, 53 N.W. 719, 719 (1892) (holding the district court has no discretionary authority to enlarge or extend the time in which a party is allowed to redeem). Because the mortgagor's payment was not received by the purchaser's attorney until after the expiration of the redemption period, it was not timely. *Nelson,* 495 N.W.2d at 202.

The resolution of this issue by the *Nelson* court effectively settles the first issue in the present case. In order to comply with the statute, substantially or otherwise, the payment must be received by the proper party within the redemption period. *Id.* The parties do not dispute that this did not occur. Sieve did not comply with the statutory requirements.

We reject the argument that Rosar cannot complain of the tardiness because he was a purchaser and not a junior creditor. Although some of the statutory requirements are solely for the protection of junior creditors, the requirements at issue in this case must be, at least in part, for the benefit of the purchaser. The purchaser is certainly entitled to assurances that he will receive the redemption funds, either directly or through the county sheriff. The time limitation is also important to the purchaser in that it provides him a date certain when he knows the property is his. As the supreme court has noted, strict construction of the statute is necessary for

predictability in real estate commerce. *In re Petition of Brainerd Nat'l Bank,* 383 N.W.2d 284, 289 n. 7 (Minn.1986).

The conclusion that Sieve failed to comply with the statute, however, does not resolve the case. The *Nelson* court addressed other potential means of overcoming a late redemption and, although the court in *Nelson* rejected all theories, it did not foreclose the possibility of their application under other circumstances. *Nelson,* 495 N.W.2d at 202–03.

The *Nelson* mortgagor argued that the purchaser was equitably estopped from asserting lateness because it failed to object for six days. *Id.* at 203. The supreme court rejected that argument because there was no showing that the mortgagor detrimentally relied on the failure to immediately object. *Id.* The circumstances in the present case, however, might demand a different result.

The elements of equitable estoppel, as set forth by the supreme court, are:

1. There must be conduct—acts, language *or silence*—amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped * * *. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon * * *. 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse.

*Lunning v. Land O'Lakes,* 303 N.W.2d 452, 457 (Minn.1980) (emphasis added)

(quotation omitted); *see also Thorson v. Rice County Dist. One Hosp.*, 437 N.W.2d 410, 414 (Minn.1989) (conduct includes not only words but also a "party's *silence or failure to act* when normally action might be expected") (emphasis added). The application of equitable estoppel is a question of fact unless only one inference can be drawn from the facts. *Rice St. VFW, Post No. 3877 v. City of St. Paul*, 452 N.W.2d 503, 508 (Minn.App.1990).

 The district court did not reach Sieve's equitable estoppel argument. In fact, Sieve may have two valid arguments. First, from the evidence in the record it can be inferred that Rosar and his wife, by a combination of words and silence, led Sieve's attorney to believe that he could send the redemption funds to Rosar's office and that completion of the redemption would be arranged. The evidence also supports an inference that the Rosars' conduct was intended to induce, and did induce, Sieve to send the check to the office. Rosar argues that Sieve could have retrieved the check and redeemed from the sheriff, but common sense leads to a contrary conclusion. It seems highly unlikely that Meyers would have given an envelope addressed and belonging to Rosar to someone unknown to him.

Next, unlike the mortgagor in *Nelson*, Sieve has made an initial showing that he detrimentally relied on Rosar's failure to make an immediate objection to Sieve's noncompliance with the statute. More specifically, Sieve alleges that he incurred expenses in making repairs to the property.

Rosar argues that this court's decision in *First Nat'l Bank v. Pletsch*, 543 N.W.2d 706 (Minn.App.1996), *review denied* (Minn. Apr. 16, 1996) precludes the application of equitable estoppel. We disagree. In *Pletsch*, the bank held two mortgages on the subject property. *Id.* at 707. The bank foreclosed on the first mortgage, but failed to redeem under the second mortgage. *Id.* at 708. When a junior lienholder who had acquired, unknown to the bank, a mortgage during the mortgagor's redemption period redeemed under his mortgage, the bank's second mortgage was extinguished. *Id.* The bank sought an "equitable exception" to the rule that if a person holds a lien on property and fails to redeem, that lien is extinguished when a junior lienholder redeems. *Id.* at 709. This court declined to create such an exception because, contrary to the bank's assertions, there was no evidence of collusive, fraudulent or otherwise wrongful conduct. *Id.* at 710.

We are not asked here to create an exception to the statutory requirements. Instead, Sieve seeks to estop Rosar from asserting the defense that Sieve failed to comply with the statutory requirements. This is a significant distinction.

Because there are genuinely disputed issues concerning the application of equitable estoppel and because the decision to apply the doctrine rests within the discretion of the district court, *see Dain Bosworth, Inc. v. Goetze*, 374 N.W.2d 467, 471 (Minn.App.1985), we reverse and remand.

## DECISION

The district court erred by granting summary judgment in favor of Sieve.

**Reversed and remanded.**