**TIMELINE, LLC, petitioner, Appellant,**

v.

**WILLIAMS HOLDINGS # 3, LLC, Respondent.**

No. A04–2189.

Court of Appeals of Minnesota.

June 28, 2005.

Douglas J. Dehn, Barna, Guzy & Steffen, Ltd., Coon Rapids, MN, for appellant.

Kevin J. Dunlevy, Beisel & Dunlevy, P.A., Minneapolis, MN, for respondent.

Considered and decided by LANSING, Presiding Judge; HALBROOKS, Judge; and MINGE, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's grant of partial summary judgment in favor of respondent, arguing that the district court erred by concluding that the redemption by respondent's predecessor of a foreclosed residential property had substantially complied with the express requirements of Minn.Stat. § 580.25 (2002). Appellant also argues that respondent sought to obtain title to the property in question based upon an illegal mortgage prohibited by Minn.Stat. § 58.13, subd. 1(13) (2002). Finally, citing the equitable unclean-hands doctrine, appellant argues that respondent should not be allowed to benefit from its actions. Because we conclude that respondent complied with the express requirements of Minn.Stat. § 580.25 and because appellant is not authorized to prosecute an illegal-mortgage claim nor entitled to equitable relief, we affirm.

## FACTS

In June 1995, Cheri Martin purchased residential property in Hennepin County and, over a two-year period, executed two mortgages against the property. A senior mortgage, initially held by Lakeland Mortgage Corporation, was assigned to Norwest Mortgage, Inc., now known as Wells Fargo Home Mortgage, Inc. (Wells Fargo), soon after the property was purchased. Approximately two years later, Martin executed a junior home-equity mortgage, first held by BrooksAmerica Mortgage Corporation and subsequently assigned to Chase Manhattan Bank, now known as JP Morgan Chase Bank (JP Morgan), as trustee.

Because Martin had failed to make timely mortgage payments, Wells Fargo commenced foreclosure proceedings in the spring of 2003. On June 18, 2003, Wells Fargo foreclosed its senior mortgage, giving Martin six months—until December 18, 2003—to redeem the property. On July 10, JP Morgan filed a notice of intent to redeem as a junior creditor on the second mortgage. In October and November, the Chesshire Home Owners Association (Chesshire) filed and recorded a lien statement and notice of its intent to redeem, claiming debts of $3,238.50 against the Martin property for unpaid fees. In December, Chesshire assigned its lien to appellant Timeline, LLC.

On December 18, 2003, Martin executed two promissory notes and two $500 mortgages in favor of respondent Williams Holdings # 3 (Williams # 3). With these mortgages, Williams # 3 filed its own notice of intent to redeem. Martin entered into the agreement with Williams # 3 because she was "without the financial ability to redeem from the [f]oreclosure and [was] in danger of [losing] the [p]roperty to foreclosure." On December 23, 2003, JP Morgan assigned its second mortgage to

Williams Holdings # 4 (Williams # 4). In this assignment, Residential Funding Corporation (Residential Funding) was listed on the document as JP Morgan's attorney-in-fact.

On December 26, Timeline redeemed from the foreclosure of the first Wells Fargo mortgage as a junior creditor through Chesshire's assignment of its lien. On December 31, Williams # 4 presented documents to redeem the property from Timeline. On January 5, 2004, the county sheriff issued a certificate of redemption to Williams # 4, certifying that it had redeemed the property on December 31. On January 8, Williams # 3 did the same and was also issued a certificate of redemption by the county sheriff.

Two weeks later, Timeline attempted to reject Williams # 4's redemption by returning to the county sheriff the money that it had received from the redemption. In a letter to the sheriff, Timeline stated that Williams # 4 did not establish its right to redeem because it had "failed to produce certified copies" of documents evincing (1) a corporate name change by Chase Manhattan to JP Morgan and (2) a written power-of-attorney from Chase Manhattan to Residential Funding. Williams # 3 then sued to quiet title to the property in its favor, claiming that it was a lien creditor with a right to redeem from the sale of Martin's home and asserting a slander-of-title claim. Timeline answered and counterclaimed to quiet title in its favor, claiming that Williams # 4 had failed to follow Minn.Stat. § 580.25 (2002), which sets forth the statutory requirements for a proper redemption. Williams # 3 moved for partial summary judgment, asserting that Williams # 4's redemption substantially complied with the statutory requirements. The district court determined that Williams # 4 had substantially complied with the statute and granted par-

tial summary judgment on that claim. Following dismissal of Williams # 3's slander-of-title claim, final judgment was entered. This appeal follows.

## ISSUES

1. Did the district court err by granting summary judgment to Williams # 3 based on its conclusion that Williams # 4's redemption had substantially complied with Minn.Stat. § 580.25 (2002)?

2. Can Timeline assert that Williams # 3 acquired title through use of an illegal mortgage created for the purpose of acquiring title?

3. Did the district court abuse its discretion by denying Timeline's request for equitable relief?

## ANALYSIS

Whether summary judgment was properly granted is a question of law, which we review de novo. *Prior Lake Am. v. Mader*, 642 N.W.2d 729, 735 (Minn.2002). In doing so, we consider whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The evidence will be viewed in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Questions of statutory construction are also reviewed de novo. *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 702 (Minn.1999). When we interpret a statute, we look to see "whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (citation and quotation omitted). If the language in a statute is clear, we will rely on its plain meaning. Minn.Stat.

§ 645.16 (2004); *Correll v. Distinctive Dental Servs.*, 607 N.W.2d 440, 445 (Minn. 2000).

## I.

Timeline argues that Williams # 3's acquisition of property title is invalid because its predecessor, Williams # 4, did not properly conform to the statutory requirements of Minn.Stat. § 580.25 (2002).[1] Timeline asserts that the redemption was invalid because (1) there was no evidence of a corporate name change from Chase Manhattan to JP Morgan and (2) JP Morgan had not appointed Residential Funding as its attorney-in-fact. According to Timeline, without such an appointment, Residential Funding would not have had the authority to assign JP Morgan's interest in the second mortgage to Williams # 4.

The district court held that Williams # 4 had substantially complied with the redemption requirements of Minn.Stat. § 580.25. It observed, "Although Williams # 4 apparently provided evidence of neither Chase Manhattan Bank's name change nor a written power of attorney from JP Morgan Chase Bank to Residential Funding, the court holds that a plain reading of Section 580.25(2) does not require such evidence." The court also noted that Timeline failed to cite authority showing that "certificate[s] evidencing a name change or a written power of attorney are anything more than formal requirements, if at all, of Section 580.25."

■■■ As the district court correctly observed, the validity of a redemption depends on whether the party redeeming has substantially complied with the statutory redemption procedures. *Sieve v. Rosar*, 613 N.W.2d 789, 792 (Minn.App.2000). In order to promote certainty and predictability in real-estate transactions, the redemption statute is interpreted strictly according to its terms. *In re Petition of Brainerd Nat'l Bank*, 383 N.W.2d 284, 289 n. 7 (Minn.1986). But strict construction does not preclude redemption when formal defects do not prejudice the rights of junior lienors. *Sieve*, 613 N.W.2d at 792–93. Moreover, "[w]hile the essential elements of the statute must be strictly adhered to, failure to comply with the more formal requirements may be overlooked." *Id.* at 793.

■■■ To establish the right to proceed with redemption, a lienor must record a notice of intent to redeem during the six-month redemption period. Minn.Stat. § 580.24 (2002). Once the mortgagor's redemption period ends, each creditor with a legal or equitable lien has a successive seven-day period for redemption, proceeding by order of seniority.[2] *Id.* To effectuate redemption during the appropriate period, a creditor must pay the appropriate amount to either the sheriff or the immediate senior creditor. Minn.Stat. § 580.25 (2002). The procedural requirements for creditors redeeming from a mortgage foreclosure is set forth by statute:

> The person desiring to redeem shall pay to the person holding the right ac-

1. In 2004, the redemption statute was amended. *See* 2004 Minn. Laws ch. 234, § 5 (amending Minn.Stat. § 580.25). When rights affected by an amended law vest prior to the change in the law, we apply the law in effect at the time of the transactions at issue. *Interstate Power Co. v. Nobles County Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn.2000). Accordingly, we cite the 2002 version of the

Minnesota Statutes, which were in effect at the time of the transaction at issue here.

2. While the seniority of the liens has not been challenged here, we note that seniority is usually determined by the chronological order in which liens or mortgages are recorded. *United States v. Dairy Farm Leasing Co.*, 747 F.Supp. 1335, 1338 (D.Minn.1990).

quired under such sale, or for that person to the sheriff who made the sale, or a successor in office, the amount required by law for such redemption, and shall produce to such person or officer:

(1) a copy of ... the deed or mortgage ... certified by the officer in whose custody such ... files shall be, or the original deed or mortgage, with the certificate or record endorsed thereon;

(2) any assignment necessary to establish the person's claim, verified by the affidavit of that person or a subscribing witness thereto, or some person acquainted with the signature of the assignor....;

(3) an affidavit of the person or the person's agent, showing the amount then actually due on the person's lien.

*Id.* These documents must be recorded within 24 hours after the redemption. *Id.* The recorder then completes a certificate of redemption, which must also be recorded. Minn.Stat. § 580.26 (2002). Once the certificate is recorded, the claims of all senior lienors or mortgagees are extinguished. *Brainerd Nat'l Bank,* 383 N.W.2d at 288–89.

## A. Corporate Name Change

■■ Williams # 4 did not present a certificate of name change at the time it presented its redemption documents to the sheriff. Citing Minn.Stat. § 507.411 (2002), Timeline contends that this omission constitutes a lack of substantial compliance with the statutory-redemption procedures of Minn.Stat. § 580.25. The district court held that such evidence was not expressly required by the statute. Even though Timeline did not address this issue in its brief, the issue was raised in its reply brief. Normally, issues not raised or argued in an appellant's brief

are waived and cannot be revived in a reply brief. *McIntire v. State,* 458 N.W.2d 714, 717 n. 2 (Minn.App.1990), *review denied* (Minn. Sept. 28, 1990); *see also* Minn. R. Civ.App. P. 128.02, subd. 3 ("The reply brief must be confined to new matter raised in the brief of the respondent."). We will, however, review this issue in the interest of justice. *See* Minn. R. Civ.App. P. 103.04 (appellate court has discretion to review any matter that the interest of justice requires).

■ Minn.Stat. § 580.25, itself, does not require a certificate of name change in order to effectuate a redemption. But Minn.Stat. § 507.411 provides in part:

When a change in the name or identity of a corporate mortgagee or assignee of the mortgagee is caused by or results from a merger, consolidation, amendment ... or conversion ..., a mortgage assignment, satisfaction, or release that is otherwise recordable and that specifies in the body of the instrument the merger, consolidation, amendment, or conversion event causing the change in name or identity is in recordable form. The assignment, satisfaction, or release is entitled to be recorded in the office of the county recorder or filed with the registrar of titles, *without further evidence of corporate merger, consolidation, amendment, or conversion. For purposes of assigning, satisfying, or releasing the mortgage, the assignment, satisfaction, or release is prima facie evidence of the facts stated in it with respect to the corporate merger, consolidation, amendment, or conversion,* and the county recorder and the registrar of titles shall rely upon it to assign, satisfy, or release the mortgage.

(Emphasis added.) While this particular statutory provision has never been interpreted in Minnesota, its plain meaning is clear enough—documentation of a name

change need not be recorded, so long as the information is present on the filed underlying document itself. As one commentator notes, "[a] corporate merger assignment, satisfaction or release reciting a merger, consolidation or charter amendment is prima facie evidence of the facts stated on the assignment, satisfaction or release, *thus eliminating the need to file the supporting documentation.*" 6A Richard S. Gillman, *Minnesota Practice* § 48.24 (Supp.2004) (emphasis added).

The assignment-of-mortgage document filed in this instance was signed by Residential Funding as attorney-in-fact for "JP MORGAN CHASE BANK AS TRUSTEE, C/O RESIDENTIAL FUNDING CORP., *FKA CHASE MANHATTAN BANK AS TRUSTEE,* C/O RESIDENTIAL FUNDING CORP." (Emphasis added.) For the limited purposes of redemption, further evidence of the corporate name change from Chase Manhattan Bank to JP Morgan Chase Bank need not have been submitted to the sheriff in order to redeem. Requiring corporate-name-change documentation in the redemption context is exactly the kind of "more formal requirement[] [that] may be overlooked." *Sieve,* 613 N.W.2d at 793.

### B. Attorney–in–Fact

■ Timeline next argues that Williams # 4 failed to provide supporting documentation to prove that Residential Funding was Chase Manhattan's attorney-in-fact. The district court held that Minn.Stat. § 580.25 does not require the filing of such documentation in order to effectuate a valid redemption. Timeline maintains that while such evidence is not explicitly mandated by Minn.Stat. § 580.25, it is required under Minnesota law governing power of attorneys. Thus, the ultimate question is whether Williams # 4 was required to file evidence that Residential Funding was attorney-in-fact for JP Morgan in order to effectuate a valid redemption under Minn. Stat. § 580.25.

For contextual purposes, Minn.Stat. § 523.01 (2002) explains when one party is authorized to serve as another's attorney-in-fact:

A person who is a competent adult may, as principal, designate another person or an authorized corporation as the person's attorney-in-fact by a written power of attorney. *The power of attorney is validly executed when it is dated and signed by the principal and, in the case of a signature on behalf of the principal, by another, or by a mark, acknowledged by a notary public.* Only powers of attorney validly created pursuant to this section or section 523.02 are validly executed powers of attorney for the purposes of sections 523.01 to 523.24.

*Id.* (emphasis added). The document at issue here—JP Morgan's assignment of the mortgage to Williams # 4—was signed by an officer of Residential Funding, and "acknowledged by a notary public." *Id.* "If the exercise of the power of attorney requires execution and delivery of any instrument which is recordable, the power of attorney and any affidavit authorized under sections 523.01 to 523.24 when authenticated for record in conformity with section 507.24, are also recordable." Minn. Stat. § 523.05 (2002). Under Minn.Stat. § 507.24, subd. 1 (2002), "[t]o entitle any conveyance, power of attorney, or other instrument affecting real estate to record, it shall be executed, acknowledged by the parties executing the same, and the acknowledgment certified, as required by law." *Id.*

But the Minnesota Supreme Court has explained that the very "purpose of redemption is to allow junior creditors to preserve their interests, which would oth-

erwise be extinguished by foreclosure of senior liens. The record notice required in the redemption procedure is essential to preserving these rights and we have required strict compliance with the notice provisions of the statute." *Brainerd Nat'l Bank*, 383 N.W.2d at 289 (citation omitted); *see also Taber v. Rathbun*, 168 Minn. 370, 372, 210 N.W. 95, 96 (1926) ("The purpose of the statute requiring the affidavit is to make a record for the information of subsequent lienholders who may desire to redeem."); *Tinkcom v. Lewis*, 21 Minn. 132, 140–41 (1874) ("The purpose of the provision ... [is] to furnish the sheriff with evidence of the right of the assignee or creditor to redeem....").

In *Sieve v. Rosar*, we addressed the procedural requirements necessary in order to effectuate a valid redemption. 613 N.W.2d 789. We reversed a district court's grant of summary judgment on the ground that the respondent did not make payment to the proper party within the time limitation set forth in Minn.Stat. § 580.25 (1998). *Id.* at 794–95. Enforcing the positive terms of Minn.Stat. § 580.25, we concluded that "the payment must be received by the proper party within the redemption period." *Id.* at 794.

We do not see such noncompliance here. Given the very purpose of redemption and the affirmative requirements set forth in Minn.Stat. § 580.25, to require supporting documentation of Residential Funding's status as JP Morgan's attorney-in-fact would be exactly the kind of "more formal requirement[] [that] may be overlooked." *Sieve*, 613 N.W.2d at 793; *see also Tinkcom*, 21 Minn. at 141 ("Merely formal deviations or irregularities may be overlooked; but there must be a substantial compliance with the *express* requirements of the statute, in order to [effect] a valid redemption.") (emphasis added); *cf. Morrison v. Mendenhall*, 18 Minn. 232, 241, 18 Gil. 212,

227 (1872) (concluding that the power to execute an assignment by an attorney-in-fact need not be recorded because the foreclosure statute "requires no such record ... [and such record] is not a prerequisite to the right to foreclose").

Notably, Minn.Stat. § 580.25 does not require proof of attorney-in-fact status. Here, Williams # 4—as the "person desiring to redeem"—needed to submit the following items: (1) payment in the amount required by law for the redemption, (2) a copy of the mortgage, (3) a copy of "any assignment necessary to establish the person's claim, verified by the affidavit of that person or a subscribing witness thereto," and (4) an affidavit of the person or his/her agent, showing the amount then actually claimed due on the person's lien and required to be paid on the lien in order to redeem from the person. Minn.Stat. § 580.25. On December 31, 2003, the record reflects that Williams # 4 presented (1) a cashier's check, (2) a copy of the home-equity mortgage, (3) a copy of the assignment, and (4) an affidavit of amount due in order to redeem the property. Thus, the express requirements of the statute were met.

While this controversy might have been avoided had Williams # 4 attached an affidavit to provide definitive proof of Residential Funding's status as JP Morgan's attorney-in-fact, we cannot say that this technical oversight invalidates the redemption before us. An assignment-of-mortgage document in the record shows that JP Morgan was assigned the second home-equity mortgage from BrooksAmerica and that Residential Funding was JP Morgan's attorney-in-fact. The document was drafted by Residential Funding's counsel, who is also Williams # 3's counsel on this appeal. But there is no reason to assume that Residential Funding was not JP Morgan's attorney-in-fact for redemption pur-

poses.[3] In its brief, Timeline seems to impliedly doubt the authenticity of the assignment-of-mortgage document, claiming that Residential Funding might not have been authorized to act as JP Morgan's attorney-in-fact, and therefore, that its redemption was invalid. But at oral argument, Timeline conceded that the procedure employed here was not a "hoax." And while it explained that no evidence of Residential Funding's attorney-in-fact status had ever been produced, it also acknowledged that such evidence had never been requested throughout this litigation.

■ Importantly, and as the district court noted, Timeline has failed to offer conclusive authority to show that such proof is required to redeem. Nor has Timeline offered any evidence to call Residential Funding's attorney-in-fact status into question. Were such evidence before us, we would have a very different question to resolve. The very purpose of the redemption statute is "to furnish the sheriff with evidence of the right of the assignee or creditor to redeem." *Tinkcom*, 21 Minn. at 141. Williams # 4 has done as much. Thus, for the limited purpose of effectuating a valid redemption in Minnesota, we conclude that proof of attorney-in-fact status is not expressly required and we will not disturb the redemption of Martin's foreclosed residential property by Williams # 4. Accordingly, Timeline does not have a valid interest in the property because its rights in the property were satisfied by William # 4's redemption.

## II.

■ Timeline also argues that Williams # 3 attempted to acquire title by using an illegal mortgage created for the

purpose of acquiring title to Martin's property. The district court ruled that the statute prohibiting such transactions does not create a private cause of action and that any relief sought under the statute must be pursued through Minn.Stat. § 8.31, subd. 3a (2002), commonly referred to as the "private attorney general statute."

Minn.Stat. § 58.13, subd. 1(13) (2002), provides:

No person acting as a residential mortgage originator or servicer . . . shall:

. . . .

(13) make or assist in making any residential mortgage loan with the intent that the loan will not be repaid and that the residential mortgage originator will obtain title to the property though foreclosure.

The district court relied upon an unpublished decision of a federal district court for the proposition that a violation of Minn. Stat. § 58.13 (2002) must be brought pursuant to the private-attorney-general statute, Minn.Stat. § 8.31, subd. 3a. *Davis v. U.S. Bancorp*, No. Civ. 02–505, 2003 WL 21730102, *4 (D.Minn.2003). We agree and note that such rights are only given "to those claimants who demonstrate that their cause of action benefits the public." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn.2000). We therefore conclude that, because the transaction at issue here is a private one, Timeline is barred from pursuing a claim under the private-attorney-general statute.[4]

## III.

■ Finally, citing the unclean-hands doctrine, Timeline argues that because

---

3. In addition, the junior home-equity mortgage lists Residential Funding as its servicer. The mortgage was first held by BrooksAmerica Mortgage Corporation and was later assigned to Chase Manhattan Bank—now known as JP Morgan—as trustee.

4. In addition, this court has recently noted that the Department of Commerce has jurisdiction over enforcement of the Minnesota Residential Mortgage Originator and Servicer Licensing Act, Minn.Stat. §§ 58.01–58.17 (2002), which includes Minn.Stat. § 58.13,

Williams # 3 acted inequitably in this case, it should not benefit from such actions. The doctrine of unclean hands is reflected in the equitable maxims that "he who seeks equity must do equity and that he who comes into equity must come with clean hands." *Johnson v. Freberg,* 178 Minn. 594, 597, 228 N.W. 159, 160 (1929). It is within the district court's discretion to grant equitable relief and "[o]nly a clear abuse of that discretion will result in reversal." *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn.1979).

Timeline maintains that because it was Williams # 3's intention to obtain title to the Martin property through foreclosure and that Minn.Stat. § 58.13, subd. 1(13), prohibits such actions, the district court should not have granted relief to a party with "unclean hands." But Williams # 3 did not admit such nefarious motives. In fact, during discovery Williams # 3 specifically denied "that its intent was to obtain title to Cheri Martin's home." The district court's decision not to grant equitable relief to Williams # 3 on this record was not an abuse of discretion.

## DECISION

Because the district court correctly held that Williams # 4 substantially complied with the essential elements of Minn.Stat. § 580.25 (2002), and did not need to provide evidence of a corporate name change or attorney-in-fact status, we affirm. In addition, the district court did not err by denying relief to Williams # 3 under Minn. Stat. § 58.13, subd. 1(13) (2002), or abuse its discretion by denying equitable relief to Timeline.

**Affirmed.**

subd. 1(13). *See Pomrenke v. Comm'r of Commerce,* 677 N.W.2d 85, 91 (Minn.App.2004).