TCM PROPERTIES, LLC, Respondent,

v.

Lawrence P. GUNDERSON,
et al., Appellants,

and

Timothy J. Menne, Appellant,

v.

TCM Properties, LLC, et
al., Respondents.

No. A05–1979.

Court of Appeals of Minnesota.

July 18, 2006.

Clark A. Joslin, Clark A. Joslin Law Offices, P.A., Cambridge, MN, for respondent.

John C. Povejsil, Forest Lake, MN; and Craig J. Beuning, Vadnais Heights, MN, for appellants.

Considered and decided by HUDSON, Presiding Judge; KALITOWSKI, Judge; and WORKE, Judge.

## O P I N I O N

KALITOWSKI, Judge.

On appeal in this mortgage-redemption dispute, appellant-mortgagors Lawrence and Kathryn Gunderson and appellant-mortgagee Timothy Menne argue that (1) Minn.Stat. § 58.13 (2004) does not create a private cause of action; (2) the district court erred by concluding that their mortgage transaction violated Minn.Stat. § 58.13, subd. 1(13); and (3) Menne complied with the statutory redemption requirements.

## FACTS

Appellants Lawrence and Kathryn Gunderson (Gundersons) were fee owners of their homestead in Chisago County, Minnesota. They defaulted on the mortgage on the property and the property was sold at a sheriff's sale. Respondent TCM is a real-estate investment company that acquired an interest in the Gundersons' property when it purchased a judgment against Lawrence Gunderson.

As the Gundersons' redemption period neared its end, their attorney asked appellant Timothy Menne (Menne) to help the Gundersons protect the equity in their home by taking liens on their home and redeeming them after the Gundersons' redemption period expired. Menne, who is the Gundersons' friend and had lent them approximately $3,000 over the previous three years, agreed. On April 21, 2005, the last day of their redemption period, the Gundersons executed and delivered five $100 mortgages to Menne. *See* Minn. Stat. § 580.23, subd. 1 (2004).

According to the testimony of Menne, Kathryn Gunderson, and the attorney who structured the transaction, they executed the mortgages for two purposes. The first purpose was to extend the statutory redemption period to allow time to sell the home and pay off the Gundersons' debts with the proceeds. The second purpose was to secure the $3,000 debt. Kathryn Gunderson testified that the Gundersons intended to repay Menne. And Menne testified that he expected to be repaid with the proceeds of the sale of the home.

Menne, through his attorney, recorded the five mortgages and notices of intent to redeem on April 21, 2005. The attorney testified that he then filed the mortgages and notices with the sheriff's department. Minutes after Menne recorded his mortgages, TCM recorded its judgment against the property. TCM then delivered the necessary redemption documents to the sheriff's office.

The clerk at the sheriff's office concluded that because the mortgages were not in the file, Menne's attorney did not file them with the notices of intent to redeem. She also testified that shortly after Menne filed his documents, a TCM representative came to the sheriff's office and looked at the file. The clerk did not remember if the file left her sight while the TCM representative was reviewing it. Finally, the clerk explained that the sheriff's office does not have a recording mechanism to keep track of what the department receives and when it receives it.

On April 22, 2005, TCM made full payment of the funds necessary to redeem as a junior creditor. Accordingly, the sheriff's office issued TCM a certificate of redemption. TCM filed an eviction action against the Gundersons, and Menne commenced an action for declaratory judgment

and injunctive relief, seeking a declaration that Menne was the sole party entitled to redeem as a junior creditor. After hearing testimony concerning both matters, the district court held that Menne was entitled to redeem, and it denied TCM's request for eviction of the Gundersons until Menne's right to redeem expired.

TCM filed a motion to amend the findings or for a new trial. TCM argued that Menne should be denied equitable relief because he violated Minn.Stat. § 58.13, subd. 1(13) (2004), and that Menne had not strictly complied with the redemption procedure.

The district court issued amended findings and conclusions of law, completely reversing its previous order. In its amended order, the court more closely examined Minn.Stat. § 58.13, subd. 1(13), and found that its restrictions applied to Menne. The court acknowledged that although this court's opinion in *First Nat'l Bank of Glencoe/Minnetonka v. Pletsch,* 543 N.W.2d 706 (Minn.App.1996), *review denied* (Minn. Apr. 16, 1996), supported the mortgage transaction, Minn.Stat. § 58.13, subd. 1(13), overruled *Pletsch.* Furthermore, because the transactions between the Gundersons and Menne violated Minn.Stat. § 58.13, subd. 1(13), the court found that they were precluded from seeking equitable relief because they entered the proceedings with unclean hands. And finally, the court concluded that it was "uncertain" whether Menne complied with the procedural redemption requirements found in Minn.Stat. § 580.24 (2004).

## ISSUES

1. Was TCM precluded from asserting that Menne violated Minn.Stat. § 58.13, subd. 1(13) (2004), because it failed to bring a claim pursuant to Minnesota's private-attorney-general statute?

2. Did the district court abuse its discretion by holding that Menne was barred from asserting his declaratory-judgment claim because he violated Minn.Stat. § 58.13, subd. 1(13)?

3. Did Menne comply with the statutory requirements for redemption?

## ANALYSIS

### I.

■ Appellants contend that TCM was barred from pursuing a violation of Minn. Stat. § 58.13, subd. 1(13) (2004), because TCM did not bring its claim pursuant to the private-attorney-general statute, Minn. Stat. § 8.31, subd. 3a (2004), and because TCM's claim did not benefit the public. We disagree.

Recently, this court addressed the issue of whether claims alleging violations of Minn.Stat. § 58.13 must be brought pursuant to the private-attorney-general statute. *Timeline, LLC v. Williams Holdings # 3,* 698 N.W.2d 181, 189 (Minn.App.2005), *review denied* (Minn. Aug. 24, 2005). In *Timeline,* the appellant argued that the mortgage underlying a creditor's redemption violated Minn.Stat. § 58.13, subd. 1(13). 698 N.W.2d at 189. The district court held, and this court agreed, that a violation of Minn.Stat. § 58.13 (2002) must be alleged pursuant to the private-attorney-general statute, Minn.Stat. § 8.31, subd. 3a. *Id.* After noting that Minn.Stat. § 8.31, subd. 3a, applies only to claimants who demonstrate that their cause of action benefits the public, this court concluded that the appellant was barred from pursuing its claim because the transaction at issue was a private one. *Id.* (quoting *Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn. 2000)).

Here, unlike the appellant in *Timeline,* TCM did not assert a claim seeking to enforce Minn.Stat. § 58.13. Instead, TCM

argued that Minn.Stat. § 58.13, subd. 1(13), provided grounds for denying Menne's request for equitable relief. Because TCM did not seek private enforcement of Minn.Stat. § 58.13, subd. 1(13), and because, as discussed below, we hold that Menne did not violate the statute, we conclude that TCM's argument was not precluded by its failure to establish a claim pursuant to the private-attorney-general statute.

## II.

■ Appellants argue that the district court erred when it held that Menne was barred from seeking equitable relief because the mortgage underlying Menne's attempted redemption violated Minn.Stat. § 58.13, subd. 1(13). We agree.

■ Granting equitable relief is within the sound discretion of the trial court. *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn.1979). "Only a clear abuse of that discretion will result in reversal." *Id.* But application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court. *O'Malley v. Ulland Bros.,* 549 N.W.2d 889, 892 (Minn. 1996).

The district court held that because Menne violated Minn.Stat. § 58.13, subd. 1(13), when he entered into the mortgage transaction with the Gundersons, he was precluded from seeking equitable relief because he entered the proceedings with unclean hands. The court also stated that the subsequent enactment of the statute overturned the redemption practice that this court approved in *First Nat'l Bank of Glencoe/Minnetonka v. Pletsch,* 543 N.W.2d 706 (Minn.App.1996), *review denied* (Minn. Apr. 16, 1996).

In *Pletsch,* the appellant bank foreclosed two mortgages that it held on the respondents' home. 543 N.W.2d at 707–08.

Anticipating the end of their redemption period, respondents found a benefactor "willing to take a lien on the property and to redeem the property as a junior lienholder and then lease the property back to [respondents] with an option to repurchase." *Id.* at 708. The benefactor lent the homeowners $100 in exchange for a mortgage and filed a notice of intent to redeem. *Id.* at 708 & n. 2. The benefactor's redemption extinguished the bank's second mortgage as an intervening, unredeemed lien. *Id.* at 708. On appeal, this court rejected the bank's suggestion that respondents acted fraudulently, stating that "respondents' transaction . . . was not a 'sham' but a lawful means for satisfying the mortgage demands on the pertinent property while extending the [homeowner's] opportunity for successful redemption." *Id.* at 710.

As a preliminary matter, *Pletsch* generally supports the validity of Menne's benefactor-mortgage here. In both cases, a benefactor-mortgagee accepted a mortgage at the end of a homeowner's redemption period in order to redeem the mortgage and help the homeowner retain control over the property by extending the redemption period.

Two years after this court decided *Pletsch,* the Minnesota legislature enacted the "Minnesota Residential Mortgage Originator and Servicer Licensing Act" (Act) to regulate the residential mortgage origination and servicing industry. *See* Minn.Stat. §§ 58.01–58.17 (2004). The provision governing standards of conduct states:

No person acting as a residential mortgage originator or servicer, including a person required to be licensed under this chapter, and no person exempt from the licensing requirements of this chapter under section 58.04, shall:

. . . .

(13) make or assist in making any residential mortgage loan with the intent that the loan will not be repaid and that the residential mortgage originator will obtain title to the property through foreclosure.

Minn.Stat. § 58.13, subd. 1(13). The Act defines a "residential mortgage originator" as

a person who, directly or indirectly, for compensation or gain or in expectation of compensation or gain, solicits or offers to solicit, or accepts or offers to accept an application for a residential mortgage loan through any medium or mode of communication from a borrower, or makes a residential mortgage loan.

Minn.Stat. § 58.02, subd. 19 (2004).

Here, the district court hinged its denial of equitable relief on its finding that Menne violated the Act. Thus, we first address whether the loan Menne issued to the Gundersons fell under the conduct prohibited in Minn.Stat. § 58.13, subd. 1(13).

If the language in a statute is clear, we will rely on its plain meaning. Minn.Stat. § 645.16 (2004); *Correll v. Distinctive Dental Servs., P.A.*, 607 N.W.2d 440, 445 (Minn.2000). The plain language of the statute prohibits a residential mortgage originator from making a residential mortgage loan if the originator intends (1) that the loan will not be repaid, and (2) that the originator will obtain title to the property through foreclosure. Applying the general conjunctive meaning of the word "and," the transaction is not prohibited unless both elements are present. *See* Minn.Stat. § 645.08(1) (2004) (stating that words are "construed according to rules of grammar and according to their common and approved usage").

We conclude that the record here does not indicate that Menne made the loans with the intent that they would not be repaid. Menne testified that he expected to be repaid. Kathryn Gunderson testified that she intended to repay Menne. And the attorney who facilitated the transaction stated three times during his testimony that the debts were intended to be repaid. We reject TCM's claim that the lack of correlation between the amount of the debt and the amount of the mortgages necessarily proved that Menne did not intend for the loans to be repaid.

Furthermore, there is no indication that Menne intended to obtain title to the Gundersons' property through foreclosure. Although the record does not explicitly detail the process by which Menne planned to help the Gundersons sell the home after he redeemed, the record is devoid of any evidence that Menne intended to obtain title to the Gundersons' home by foreclosing on it.

We also address the district court's suggestion that the legislature overturned the benefactor-mortgage technique approved in *Pletsch* by passing Minn.Stat. § 58.13, subd. 1(13). The district court acknowledged that it was "unclear" whether the legislature intended to bar the practice approved in *Pletsch*, but nonetheless found that application of the statute precluded such benefactor mortgages.

■ First, the practical application of the statute does not nullify the practice approved in *Pletsch* because, as was the case with Menne here, there was no indication in *Pletsch* that the lender did not intend to be repaid. *See Pletsch*, 543 N.W.2d at 708–09. Second, to the extent an ambiguity exists regarding the legislature's intent in enacting Minn.Stat. § 58.13, subd. 1(13), the legislative history of the provision indicates that its purpose was to prevent predatory lenders from

seeking out consumers in distress and offering those consumers services for which they lack the ability to pay. Hearing on S.F. No. 2966 Before the Senate Comm. on Commerce (Feb. 13, 1998). Significantly, the lenders here and in *Pletsch* did not solicit their services to financially unstable homeowners. *Pletsch*, 543 N.W.2d at 708. Rather, the homeowners solicited the benefactor-lenders' assistance. *Id.* And the homeowners sided with the benefactor-lenders at trial. *Id.* at 708–09. Therefore, to the extent *Pletsch* permits benefactor mortgages, we conclude that Minn.Stat. § 58.13, subd. 1(13), did not overturn *Pletsch.*

Moreover, by its plain language, Minn. Stat. § 58.13, subd. 1(13), does not prohibit a mortgage transaction unless the lender intends that the loan will not be repaid and that it will obtain title to the property through foreclosure. And we conclude that the mortgage at issue here does not satisfy either prong. Our conclusion is supported by the statute's legislative history, which indicates that the purpose of the statute was to curb predatory lending practices rather than to prohibit benefactor mortgages.

■ Because Menne's loans to the Gundersons did not violate the statute, the purported statutory violation cannot serve as the basis for denying Menne's claim for equitable relief under the doctrine of unclean hands. The equitable defense of unclean hands is premised on withholding judicial assistance from a party guilty of illegal or unconscionable conduct. *Fred O. Watson Co. v. U.S. Life Ins. Co.*, 258 N.W.2d 776, 778 (Minn.1977). Because appellants' mortgage transaction did not violate Minn.Stat. § 58.13, subd. 1(13), and

because the district court cited no alternative rationale for finding Menne's conduct illegal or unconscionable, we conclude that the district court abused its discretion by denying Menne's request for equitable relief.

### III.

TCM argues that Menne failed to comply with the recent amendments to the statute governing creditor redemption. Menne and the Gundersons argue that Menne substantially complied with the statute. Application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court. *O'Malley*, 549 N.W.2d at 892.

■ The validity of a redemption depends on whether the party redeeming has substantially complied with the statutory redemption procedures. *Sieve v. Rosar*, 613 N.W.2d 789, 793 (Minn.App.2000). To promote certainty in real-estate transactions, redemption statutes are interpreted strictly according to their terms. *In re Brainerd Nat'l Bank*, 383 N.W.2d 284, 289 (Minn.1986). But strict construction does not preclude redemption when formal defects do not prejudice the rights of junior lienors. *Sieve*, 613 N.W.2d at 793. "While the essential elements of the statute must be strictly adhered to, failure to comply with the more formal requirements may be overlooked." *Id.*

■ In 2004, the legislature substantially amended the statute governing creditor redemption, Minn.Stat. § 580.24, to include more detailed redemption procedures.[1] 2004 Minn. Laws ch. 234, § 4, at 724–25.

---

1. The amendments were effective January 1, 2005, and applied to "foreclosures where the mortgagor's period of redemption expires on or after the effective date." 2004 Minn. Laws ch. 234, § 6, 726. Because the Gundersons' period of redemption expired after January 1, 2005, the amended version of the statute applies here.

Under the revised statute, a creditor may not redeem unless the creditor:

(1) records with each county recorder and registrar of titles where the foreclosed mortgage is recorded a notice of the creditor's intention to redeem;

(2) records in each office where the notice is recorded all documents necessary to create the lien on the mortgaged premises and to evidence the creditor's ownership of the lien; and

(3) after complying with clauses (1) and (2), delivers to the sheriff who conducted the foreclosure sale or the sheriff's successor in office a copy of each of the documents required to be recorded under clauses (1) and (2), with the office, date and time of filing for record stated on the first page of each document.

Minn.Stat. § 580.24(a) (Supp.2005). Because filing the mortgage document is now an express requirement under the statute, it is an essential element to which creditors must "strictly adhere" in order to successfully redeem. *Sieve,* 613 N.W.2d at 793; *cf. Timeline,* 698 N.W.2d at 186–89 (holding that redeeming party substantially complied despite formal defects of failure to file documentation, which the statute did not specifically require, establishing corporate name change and attorney-in-fact status).

 Here, the district court heard conflicting testimony regarding whether Menne filed the mortgages with the sheriff's office. Menne's attorney testified that he filed the mortgages on April 21, 2005. But the sheriff's clerk concluded that because the mortgages were not in the file, Menne's attorney must not have filed them. The district court noted that the lack of a systematic recording system in the sheriff's office and the break in the chain of custody of the sheriff's foreclosure file made it difficult to determine whether Menne filed the mortgages.

Rather than resolving the issue by making a credibility determination, the district court concluded that it was "uncertain" whether Menne complied with Minn.Stat. § 580.24 and declined to reopen the record in light of its ruling on Menne's violation of Minn.Stat. § 58.13, subd. 1(13). Because we conclude that Menne did not violate Minn.Stat. § 58.13, subd. 1(13), a determination of whether Menne strictly complied with the redemption requirements by filing the mortgages with the sheriff's office as required by Minn.Stat. § 580.24(a)(3) is necessary. We therefore remand this issue to the district court for consideration in such proceedings as the district court deems appropriate.

## DECISION

The district court was not precluded from considering the application of Minn. Stat. § 58.13 as a result of TCM's failure to bring a claim pursuant to Minnesota's private-attorney general statute.

Minn.Stat. § 58.13, subd. 1(13), does not prohibit a benefactor from taking a lien on a homeowner's property during the homeowner's redemption period with the twofold purpose of redeeming the lien to enlarge the redemption period, thereby providing time for the home to be sold, and of securing the debt that the benefactor expects will be repaid from proceeds of the sale.

Because the district court did not determine whether Menne complied with the redemption requirements of Minn.Stat. § 580.24, we remand the issue to the district court for further proceedings consistent with this opinion.

**Reversed and remanded.**