*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1370**

Prime Security Bank,
Appellant,

vs.

A&G Investments, Inc., et al.,
Respondents

**Filed May 11, 2015
Affirmed
Reilly, Judge**

Scott County District Court
File Nos. 70-CV-13-24323, 70-CV-13-22134

Wyatt S. Partridge, Christopher P. Parrington, Karl K. Heinzerling, Foley & Mansfield, PLLP, Minneapolis, Minnesota (for appellant)

Bradley N. Beisel, David J. Krco, Beisel & Dunlevy, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

# UNPUBLISHED OPINION

**REILLY**, Judge

In this mortgage foreclosure dispute, appellant Prime Security Bank (Prime), the second mortgagee of certain property, foreclosed its mortgage and bought the property at the sheriff's sale and received a sheriff's certificate of sale. During the period to redeem from the Prime sheriff's sale, the holder of the first mortgage, PSB Credit Services, Inc.

(PSB), foreclosed its mortgage on property covered by the Prime mortgage. After the mortgagor did not redeem from the Prime sheriff's sale, both Prime and respondent Gladys Lindstrom redeemed from the PSB sheriff's sale as lienholders, and the sheriff's office issued a sheriff's certificate to each. Based on the competing sheriff's certificates, litigation followed in which each party asserted that it owned the property.

The district court ruled that, for purposes of redeeming from the PSB sheriff's sale, the certificate of redemption issued to respondent was valid, that Prime was not a lienholder but an owner, and therefore that, because Prime had attempted to redeem the property from the PSB sheriff's sale as a lienholder, its attempt to redeem was untimely. The district court then dismissed two related actions by Prime for possession and ownership of the property. We affirm.

## FACTS

The real property at issue is six parcels of land in Scott County. On May 11, 1998, Minnesota Valley Landscape Inc. (MVL), owned by respondents Gladys Lindstrom, Susan Lindstrom, and David Lindstrom, mortgaged the property to Metropolitan Life Insurance Company (Metropolitan).[1] MVL owned five of the six parcels; Gladys Lindstrom owned the sixth parcel. Metropolitan later assigned its mortgage to PSB, and that assignment was properly recorded four days later (PSB mortgage). All six parcels of property (PSB property) were subject to the PSB mortgage. On October 30, 2006, MVL executed a second mortgage in favor of Prime Security Bank (Prime) to secure a

---

[1] On December 12, 2014, Gladys Lindstrom died. Pursuant to Minn. R. Civ. App. P. 143.02, counsel for the estate of Gladys Lindstrom filed an affidavit on January 12, 2015, stating that David Lindstrom is to be appointed as the estate's personal representative.

$1,500,000 loan (Prime mortgage). The Prime mortgage only encumbered five of the six parcels subject to the PSB mortgage. Thus, the PSB mortgage was the first lien against the six parcels of property, and the Prime mortgage was junior to the PSB mortgage.

The sixth parcel, owned by Gladys Lindstrom, was subject to a second mortgage held in favor of Citizens Bank of Shakopee. Citizens Bank later merged with Stonebridge Bank (Stonebridge). The Stonebridge mortgage was junior to the PSB mortgage. On August 28, 2012, Stonebridge foreclosed on its mortgage. A sheriff's sale occurred that day. Stonebridge successfully bid at the sheriff's sale, and became the owner of the sixth parcel on February 28, 2013, when no party redeemed that parcel from the Stonebridge sheriff's sale within the six-month redemption period.

**Prime Mortgage Foreclosure**

When MVL defaulted on its mortgage terms, Prime foreclosed its mortgage by judicial action. At the resulting October 4, 2012 sheriff's sale, Prime bid $1,500,000 for the property. The sheriff's sale was confirmed on October 23, 2012, and Prime acquired the sheriff's certificate. There is no record that Prime had a deficiency judgment against MVL following this foreclosure. The Prime property was then subject to MVL's 12-month mortgagor's redemption period, expiring October 23, 2013.

At some point, A&G Investments, Inc. (A&G), Susan Lindstrom, David Lindstrom, and Gladys Lindstrom acquired liens on the Prime property that were junior to the Prime mortgage.[2] Before MVL's redemption period expired, A&G, Susan Lindstrom, David Lindstrom, and Gladys Lindstrom individually filed notices of intent to

---

[2] Susan Lindstrom is the registered agent of A&G.

3

redeem the Prime property from the Prime sheriff's sale. In total, junior lienholders filed five notices of intent to redeem the Prime property, extending the lienholders' redemption periods to November 28, 2013. MVL did not exercise its right to redeem the property from the Prime sheriff's sale.

### PSB Mortgage Foreclosure

On November 15, 2012, PSB foreclosed its mortgage by advertisement, and PSB made a successful bid of $431,087.81 at the sheriff's sale. The mortgagor's 12-month redemption period under the PSB foreclosure expired on November 15, 2013. On October 22, 2013, PSB assigned its sheriff's certificate of sale and tendered a quitclaim deed to A&G.

MVL, the owner, did not redeem under the PSB foreclosure. Prime, on November 1, 2013, and acting as a lienholder, filed a notice of intent to redeem the five Prime parcels from the PSB sheriff's sale. Four days later, Gladys Lindstrom, based on a January 2012 mortgage given by MVL in the amount of $300,000, filed a notice of intent to redeem as a junior lienholder those same Prime parcels from the PSB sheriff's sale. On November 18, 2013, A&G gave Gladys Lindstrom a loan that she used to redeem the Prime property from the PSB sheriff's sale, she recorded her certificate of redemption, and counsel for A&G and Gladys Lindstrom sent the sheriff a letter asserting that Prime's failure to redeem the Prime property as an *owner* (as opposed to a *lienholder*) from the PSB sheriff's sale extinguished Prime's interest in the property. The letter stated that Prime's interest was extinguished because the sheriff's certificate Prime acquired when it bought the Prime parcels at the Prime sheriff's sale made Prime the owner of the

4

property, as opposed to a lienholder having an interest in the property. Thus, the letter concluded, Prime could not redeem as a lienholder, and by failing to redeem from the PSB sheriff's sale as an owner, Prime's interest in the property was extinguished. Prime's counsel responded with a letter stating that Prime had a right to redeem as a lienholder and requested a competing certificate of redemption. On November 22, 2013, in an attempt to redeem from the PSB sheriff's sale, Prime tendered $677,752.04 to the sheriff. An assistant county attorney directed the sheriff to issue a certificate of redemption to Prime so that Prime and Gladys Lindstrom would hold competing certificates of redemption.

**Procedural History**

On November 22, 2013, Prime initiated this lawsuit, seeking a determination that it owned the Prime property. Respondents counterclaimed, claiming that Gladys Lindstrom owned the Prime property, and that Prime is liable to Gladys Lindstrom for slander of title. Prime also filed a separate eviction proceeding, which the district court later consolidated with the initial suit. The parties filed cross-motions for summary judgment; all parties argued there were no factual issues that would preclude summary judgment. The district court dismissed Prime's complaint with prejudice and granted respondents' motion for partial summary judgment, ruling that the sheriff's certificate issued to Gladys Lindstrom is valid and that she is the fee owner of the PSB property.

Prime appeals, arguing that the district court erred in ruling that, for purposes of redeeming from the PSB sheriff's sale, Prime was an owner rather than a lienholder. Prime also argues that equity requires that it receive an opportunity to redeem the

5

property. Thus, Prime requests a determination that it is entitled to ownership and possession of the property at issue.

**D E C I S I O N**

A district court must grant summary judgment if there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. This court reviews the district court's summary judgment decision de novo to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law. *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013).

**I.**

Prime argues that the district court erred when it held that Prime, a foreclosing mortgagee, was an owner of the foreclosed (Prime) property and therefore could not redeem from the PSB sheriff's sale as a junior lienholder. Prime contends that because the time for junior lienholders to redeem from the Prime sheriff's sale did not expire until November 28, 2013, Prime could not be required to redeem from the PSB sheriff's sale as an owner until after that date. Thus, Prime concludes, because it tendered its money to redeem from the PSB sheriff's sale on November 22, 2013, it could not be deemed an owner as of that time. Respondents counter that, in order to determine whether Prime needed to redeem from the PSB sheriff's sale as a lienholder or an owner, the type of interest Prime held in the relevant land must be determined as of the expiration of the mortgagor's (as opposed to the lienholders') period to redeem from the Prime sheriff's sale. Prime tendered its funds to redeem from the PSB sheriff's sale after November 15,

2013—the end of the mortgagor's redemption period—but before the end of Prime junior lienholders' redemption period, November 28, 2013. Thus, we conclude that the dispositive question on appeal is: What interest did Prime, a foreclosing mortgagee, have in property that was the subject of the Prime sheriff's sale as of November 22, 2013, a time when (a) Prime was the successful bidder at the sheriff's sale on its mortgage; and (b) the mortgagor's redemption period had expired; but (c) the redemption periods associated with the notices of intent to redeem filed by junior lienholders had not expired?

We start with a brief overview of the mortgage foreclosure process. Here, we note that this process was complicated when Prime foreclosed its junior mortgage—the Prime mortgage—before the senior mortgage—the PSB mortgage.

After the sheriff's sale of a property is completed, a mortgagor has the first opportunity to redeem, and the duration of the mortgagor's redemption period, which is generally 6 or 12 months, is determined by factors set out in Minn. Stat. § 580.23, subd. 2 (2014). *See* Minn. Stat. § 580.23, subds. 1-2 (2014). If, during the mortgagor's redemption period, "the mortgagor, the mortgagor's personal representatives or assigns" redeems the property in accordance with chapter 580, *id.*, the redemption "annuls" the sheriff's sale of the property. Minn. Stat. § 580.27 (2014).

If there is no redemption by the mortgagor, the mortgagor's personal representatives or assigns,

> the most senior creditor having a legal or equitable lien upon
> the mortgaged premises, or some part of it, subsequent to the
> foreclosed mortgage, may redeem within seven days after the

7

expiration of the redemption period determined under section 580.23 or 582.032, whichever is applicable; and each subsequent creditor having a lien may redeem, in the order of priority of their respective liens, within seven days after the time allowed the prior lienholder by paying the amount required under this section.

Minn. Stat. § 580.24(a) (2014).  If a junior lienholder elects to redeem, it must first file a notice of intent to redeem, and then it must complete the redemption in accordance with section 580.24.  If a junior lienholder properly redeems, "the certificate of redemption, executed, acknowledged, and recorded as provided in section 580.26, operates as an assignment to the creditor of the right acquired under such sale, subject to such right of any other person to redeem as provided by law."  Minn. Stat. § 580.27.

Prime argues that the redemption statutes do not support the district court's determination that Prime was the owner after the mortgagor's redemption period on the Prime property because title passes after the time for *all* redemption rights, including those of junior creditors, have expired.  Prime cites Minn. Stat. § 580.12 (2014) and Minn. Stat. § 580.19 (2014) for support.  Pertinent parts of section 580.12 require:

> When any sale of real property is made under a power of sale contained in any mortgage, the officer shall make and deliver to the purchaser a certificate, executed in the same manner as a conveyance, containing:
> . . . .
> (6) *the time allowed by law for redemption*, provided that if the redemption period stated in the certificate is five weeks and a longer redemption period was stated in the published notice of foreclosure sale, a certified copy of the court order entered under section 582.032, authorizing reduction of the redemption period to five weeks, must be attached to the certificate.
> A certificate which states a five-week redemption period must be recorded within ten days after the sale; any

8

other certificate must be recorded within 20 days after the sale. *When so recorded, upon expiration of the time for redemption, the certificate shall operate as a conveyance to the purchaser or the purchaser's assignee of all the right, title, and interest of the mortgagor in and to the premises named therein at the date of such mortgage, without any other conveyance.* A certificate must not contain a time allowed for redemption that is less than the time specified by section 580.23, 582.032, or 582.32, whichever applies.

(Emphasis added.) And Minnesota Statutes section 580.19 explains:

Every sheriff's certificate of sale made under a power to sell contained in a mortgage shall be prima facie evidence that all the requirements of law in that behalf have been complied with, and prima facie evidence of title in fee thereunder in the purchaser at such sale, the purchaser's heirs or assigns, after the time for redemption therefrom has expired.

Citing "the time for redemption" language in sections 580.12 and 580.19, Prime asserts that it could not become an owner of the Prime property as a result of the Prime sheriff's sale until after the expiration of *all* redemption rights, including those of junior lienholders. Thus, Prime concludes, the district court misread the redemption statute when it ruled that Prime became an owner of the Prime property after expiration of only the mortgagor's period to redeem from the Prime sheriff's sale. Respondents counter that "the time allowed for redemption" language refers to only the *mortgagor's* redemption period, rather than all redemption periods associated with a parcel of property foreclosed by advertisement.

The parties' differing readings of "time allowed for redemption" presents a question of statutory interpretation. The "goal of all statutory interpretation is to 'ascertain and effectuate the intention of the legislature.'" *Caldas v. Affordable Granite*

9

*& Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012) (quoting Minn. Stat. § 645.16 (2010)). The first step in statutory interpretation is to "determine whether the statute's language, on its face, is ambiguous." *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010). In determining whether a statute is ambiguous, we will "construe the statute's words and phrases according to their plain and ordinary meaning." *In re the Fin. Responsibility for the Out–of–Home Placement Costs for S.M.*, 812 N.W.2d 826, 829 (Minn. 2012). A statute is only ambiguous if its language is subject to more than one reasonable interpretation. *Id.* Multiple parts of a statute may be read together so as to ascertain whether the statute is ambiguous. *Martin v. Dicklich*, 823 N.W.2d 336, 344-45 (Minn. 2012).

The purpose of section 580.12 is to clarify what information must be included in a certificate of sale issued after a sheriff's sale, and what effect recording that certificate has on the interests of whoever was the successful bidder at that sheriff's sale. And section 580.19 describes the interests the purchaser at a sheriff's sale holds. When sections 580.12 and 580.19 are read as a whole, we conclude that the "time for redemption" is not ambiguous, and that it is limited to the redemption period of the mortgagor. We reach this conclusion for three reasons.

First, reading "time allowed for redemption" to refer to only the mortgagor's redemption period provides greater certainty in the mortgage foreclosure process. *See In re Petition of Brainerd Nat'l Bank*, 383 N.W.2d 284, 289 n.7 (Minn. 1986) (noting the importance of certainty and predictability in real estate transactions). Under Minn. Stat. § 580.12, a purchaser must record the certificate of sale within ten days after the sale, and

the certificate must contain the time "allowed by law for redemption." Because the certificate provided by the officer conducting the sale must contain the time "allowed by law for redemption," and because a junior lienholder may file a notice of intent to redeem until one week before the expiration of the mortgagor's redemption period (*i.e.*, because a junior lienholder may file a notice of intent to redeem until almost a year *after* the sheriff's sale), the "time for redemption" cannot be determined with certainty at the time the officer conducting the sale issues the certificate required by Minn. Stat. § 580.12 if the "time for redemption" includes the redemption periods for junior lienholders. Minn. Stat. § 580.25 (2014); *see* Minn. Stat. § 581.10 (2014) (directing lienholders under foreclosure by action to refer to the time requirements of Minn. Stat. § 580.23, .032).

Second, our concern about the ability of the officer conducting the sheriff's sale to identify the "time for redemption" is consistent with caselaw construing a prior version of this statute. In the venerable opinion of *Wells v. Atkinson*, 24 Minn. 161, 164 (1877), the supreme court addressed the sufficiency of a certificate of sale executed under Gen. Stat. 1866, Ch. 81, Title 1, § 11, which required a sheriff making a foreclosure sale to give the purchaser a certificate containing the "date of the sale" and "the time allowed by law for redemption." The certificate at issue in *Wells* stated that "the above described premises are subject to redemption within the time and according to the statute in such case made and provided[.]" 24 Minn. at 164. Analyzing the sufficiency of this description of the redemption period, the supreme court stated:

> [I]t can hardly be supposed that the legislature intended to impose upon an officer the duty of ascertaining in advance how many persons might become redemption creditors, by

11

> filing the requisite notice of intention to redeem within the year next after the sale, as would be necessary in order to give the exact time when, in the particular case, the period of redemption would expire, and the title under the sale become absolute; or to make an accurate performance of this duty, and a correct statement of the result in the certificate, a requisite essential to its validity. The only conceivable reasonable purpose of this provision of the statute, taken in connection with the other facts required to be stated in such certificate, is to enable a party, from its inspection, to determine the character of the sale evidenced by it, and to ascertain when and upon what terms it will become operative as an absolute conveyance.

*Id.* at 164.

Third, we are unpersuaded by Prime's caselaw-based arguments that the district court erred in ruling that "time to redeem" refers only to the mortgagor's time to redeem from the sheriff's sale. In *Farmers & Merchants Bank of Preston v. Junge*, 458 N.W.2d 698, 699 (Minn. App. 1990), the holder of a mortgage on farm property foreclosed its mortgage, the mortgagor did not redeem, a junior lienholder did redeem, and the junior lienholder later sold the property. Under Minn. Stat. § 500.24, subd. 6 (1986), when foreclosed farm property was sold, the "immediately preceding former owner" had a right of first refusal to (re)acquire that property, and *Junge* addressed the meaning of "immediately preceding former owner" in the context of a mortgage foreclosure of farm property involving junior-lien holders. *Id.* at 699-700. In doing so, *Junge* stated that the "[p]urchaser at mortgage foreclosure sale is not the immediately preceding former owner of farm property under Minn. Stat. § 500.24, subd. 6 (1986) when the property is redeemed by a junior creditor." *Id.* at 698.

12

Although *Junge* did state that a party who acquired property after a foreclosure sale but was later divested of the property by a junior lienholder was not an "owner," in context, we think *Junge* is of limited assistance here. Specifically, consistent with the idea that section 500.24 was a remedial statute "to encourage and protect the family farm as a basic economic unit, . . . and to enhance and promote the stability and well-being of rural society in Minnesota and the nuclear family[,]" *Harbal v. Fed. Land Bank of St. Paul*, 449 N.W.2d 442, 446 (Minn. App. 1989), *review denied* (Minn. Feb. 21, 1990) (quoting Minn. Stat. § 500.24, subd. 1 (1986)), *Junge* ruled that, "*for purposes of the right of first refusal, 'owner' means the holder of the fee simple title to the property*. It is established law that title to property purchased at a mortgage foreclosure vests upon expiration of the redemption period." *Junge*, 458 N.W.2d at 699-700 (emphasis added). Thus, *Junge*'s construction of "owner" as the holder of fee simple title was made "for purposes of the right of first refusal" created by then-existing Minn. Stat. § 500.24, subd. 6.[3] The current dispute does not involve Minn. Stat. § 500.24, subd. 6. Further, *Junge* was unambiguous about the narrow applicability of its construction of "owner," noting both that "[t]he word 'owner' as it relates to real property does not have a fixed meaning applicable to all circumstances[,]" and that "[i]n the context of Minn. Stat. § 500.24, subd. 6," the context in which *Junge* interpreted "owner," "the word 'owner' must be interpreted so as to effect as nearly as possible the intent of the legislature." 458 N.W.2d at 699. Given the specific context within which *Junge* construed the word "owner," and

---

[3] The right of first refusal for agricultural land is now codified at Minn. Stat. § 500.245 (2014).

13

its own explicit reluctance to define "owner" in a broadly applicable fashion, we decline to extend *Junge*'s definition of "owner" to the statutes governing the mortgage foreclosure process.

Prime also challenges the district court's reliance on *State v. Zacher*, 504 N.W.2d 468 (Minn. 1993), for the idea that "the time for redemption" in Minn. Stat. § 580.12, is limited to the mortgagor's redemption period. In *Zacher*, the bank foreclosed a mortgage secured by property owned by Zacher, and successfully bid on the property at the sheriff's sale. *Id.* at 469. One day before the mortgagor's redemption expired, Zacher removed improvements and fixtures from a building that was on the foreclosed property. *Id.* As a result, the state charged Zacher with the crime of defeating a security interest in real property under Minn. Stat. § 609.615 (1992). *Id.* at 469-70.

On appeal, the question before the supreme court was, when a mortgagee purchases mortgaged property at a foreclosure sale for the full amount of the debt, does the property continue to be subject to the mortgage for purposes of Minn. Stat. § 609.615 until the redemption period expires. *Id.* at 470. In answering this question, the supreme court reviewed applicable statutes and caselaw governing mortgage foreclosures. *Id.* at 470-72. Ultimately, the supreme court concluded that when a mortgagee purchases mortgaged property at a foreclosure sale for the full amount of the debt, the property continues to be subject to the mortgage for purposes of the criminal statute until the redemption period ends. *Id.* at 473. Although *Zacher* is instructive, because the case did not involve junior creditors, the supreme court's analysis of when the title passes to a mortgagee purchaser did not consider the redemption rights of junior creditors. There,

14

the "time for redemption" as contemplated by the statutory framework governing mortgage foreclosures was limited to the mortgagor's redemption period, and *Zacher* does not undermine the idea that the "time for redemption" in Minn. Stat. §§ 580.12 and 580.19 refers to the mortgagor's redemption period. Thus, we conclude the "time for redemption" as found in Minn. Stat. §§ 580.12.19 is limited to the mortgagor's redemption period.

**II.**

Prime claims that the district court erred in holding that it was not a lienholder within the meaning of Minn. Stat. § 580.24. We disagree. For the reasons discussed below, we conclude that, once the mortgagor's period to redeem from the Prime sheriff's sale expired, Prime was a not a lienholder capable of redemption under section 580.24.

It is paramount that a lienholder entitled to redemption under section 580.24 have a "legal or equitable lien upon the mortgaged premises." Minn. Stat. § 580.24(a). Prime contends that it "was a creditor because of the lien it held for the $1,500,000.00 purchase price that it paid at its foreclosure sale." It did not explicitly state whether its lien was legal or equitable.

In the mortgage foreclosure process, the foreclosure sale extinguishes the mortgage debt. *Zacher*, 504 N.W.2d at 471. The mortgage, however, continues to exist and protects the security interest in the property after the foreclosure sale. *Id.* In *Buchanan v. Reid*, one of the issues before the supreme court was to which class of individuals entitled to redeem—"assigns" or "creditors having liens"—does the purchaser at a foreclosure sale of a junior mortgage belong. 43 Minn. 172, 173-74, 45 N.W. 11, 12

15

(1890). The court noted that the status of a purchaser at a foreclosure of a junior mortgage, "*before the title under the foreclosure* has passed to him, has never been decided." *Id.* at 174, 45 N.W. at 12 (emphasis added). In analyzing this issue, the supreme court began with the premise that the "title of the mortgagor does not pass by the foreclosure till *his* right of redemption expires." *Id.* at 175, 45 N.W. at 12 (emphasis added). Therefore, the supreme court determined that a purchaser at a junior mortgage foreclosure sale may, "within the year from the foreclosure sale, redeem from the foreclosure of a prior mortgage as a 'creditor having a lien.'" *Id.* at 172, 45 N.W. at 11. Although the *Buchanan* court did not address which class of individuals the holder of a sheriff's certificate belonged to after the mortgagor's redemption period expired, the supreme court's holding is consistent with our determination that Prime was no longer a creditor as of October 24, 2013, because the lien secured by the mortgage merged into the legal estate when title passed to Prime upon the expiration of MVL's redemption period. *See* Minn. Stat. § 580.12 ("[U]pon expiration of the time for redemption, the certificate shall operate as a conveyance to the purchaser or the purchaser's assignee of all the right, title, and interest of the mortgagor in and to the premises named therein at the date of such mortgage.").[4]

Lastly, if we were to adopt Prime's argument of when title passes, there would be a period of time in which foreclosed property that is subject to additional junior

---

[4] Because Prime did not also hold a deficiency judgment following the foreclosure of its mortgage, we do not address the circumstance where the foreclosing mortgagee and holder of the sheriff's certificate of sale also has a deficiency judgment against the mortgagor.

lienholder redemption periods would have no owner. Minnesota law is clear that once the mortgagor's redemption period expires, the title passes from the mortgagor to whoever was the successful bidder at the sheriff's sale, and that the mortgagor then loses all rights in the property:

> The title has passed from the mortgagor to the purchaser at the foreclosure sale, but subject, nevertheless, to the right of creditors of the mortgagor to enforce their liens upon it. In the order and under conditions prescribed by statute, the senior creditor paying to the purchaser the purchase price, with interest, may redeem and become subrogated to his rights. Succeeding creditors, in the order of priority, may redeem from a preceding redemption by reimbursing the cost of his prior redemption and by paying the lien by virtue of which it was made. The last redeeming creditor becomes vested of the estate in fee.

*Sprague v. Martin*, 29 Minn. 226, 230-31, 13 N.W. 34, 36-37 (1882); *see In re Klein*, 9 F. Supp. 57, 59 (D. Minn. 1934) ("[A]fter purchasing this property . . . [the insurance company] was no longer a creditor of the Kleins, but a purchaser of the premises with a vested right to become an absolute owner of the premises, or, in lieu thereof, the payment of its bid by the redeemer."). And Prime does not argue nor suggest an alternative owner of the Prime property after the mortgagor's redemption expires but before the expiration of the junior lienholders' redemption periods. Accordingly, the successful bidder at the sheriff's sale holds a defeasible title to the property until the junior lienholders' rights of redemption expire. *See Sprague*, 29 Minn. 230, 13 N.W. 36 ("But the foreclosure proceedings instituted by the mortgagee is not yet complete, (if there are creditors who have filed notice of their intention to redeem as required by statute,) nor has the purchaser acquired an indefeasible title to the property.").

Likewise, respondents claim that instead of creating a period in which the property had no owner, Prime's interest in the property is best described as an ownership interest subject to divestment by junior lienholders or extinguishment by foreclosure of the senior PSB Mortgage. Thus, the successful bidder at the sheriff's sale foreclosing a junior mortgage may redeem from a senior foreclosure as a creditor holding a lien until the junior mortgagor's right of redemption expires, when it must redeem, if at all, as an owner.

### III.

Finally, Prime argues that because it acted in response to circumstances not addressed by the statutes, equity requires that it be allowed to redeem. "Granting equitable relief is within the sound discretion of the [district] court. Only a clear abuse of that discretion will result in reversal." *First Minn. Bank v. Overby Dev., Inc.*, 783 N.W.2d 405, 414 (Minn. App. 2010). "A party may not have equitable relief where there is an adequate remedy at law available." *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996). Equitable relief is available only upon a showing that no adequate legal remedy exists. *Allstate Sales & Leasing Co., Inc. v. Geis*, 412 N.W.2d 30, 34 (Minn. App. 1987).

Prime asserts that the district court's failure "to make findings regarding the inequity of Prime being denied the opportunity to redeem to protect its $1,500,000.00 secured interest in the Property" was an abuse of the district court's discretion. But the district court did not make findings because Prime never argued that it was entitled to equitable relief at the district court. Thus, it is not at all clear that the question of

18

equitable relief is properly before this court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that, generally, appellate courts consider only those questions previously presented to and considered by the district court). Nevertheless, even if Prime's equitable argument was properly before us, we would reject it.

Here, even though the overlapping redemption periods and multiple notices of intent to redeem did make the redemption process for the Prime and PSB sheriff sales more drawn out than normal and may have caused mistakes of law, it did not cause mistakes of fact. *See Babcock v. Am. Sav. & Loan Ass'n*, 67 Minn. 151, 153, 69 N.W. 718, 718 (1897) ("The plaintiff was entirely blameless in the matter, and there was no mistake of facts. The method of foreclosure was deliberately adopted, and the mistake one of law, pure and simple. The result of this litigation may be a hardship for the defendant, but it alone is to blame."). And Prime does not allege that respondent took illegal action to redeem the PSB mortgage ahead of Prime. *See First Nat'l Bank of Glencoe/Minnetonka v. Pletsch*, 543 N.W.2d 706, 711 (Minn. App. 1996) ("Minnesota courts are committed to follow strictly statutory rules governing mortgage foreclosures. We cannot arbitrarily narrow the doctrine of *Graybow-Daniels* by creating an imprecise exception to that holding for 'inequitable' applications not involving illegal action."), *review denied* (Minn. Apr. 16, 1996).

We recognize that, under the facts of this case, Prime's classification as a "creditor" or "owner" may not have been entirely apparent. We, however, point out that Prime had multiple avenues to preserve its interests in the property.

19

First, Prime claims that had it redeemed from the PSB foreclosure as the owner, it would have placed itself in a position in which it could not protect its additional advances under the PSB foreclosure because the time to record an additional-costs affidavit had ended. Chapter 582 provides that the holder of a sheriff's certificate of sale or a certificate of redemption may claim "any interest or installment of principal upon any prior or superior mortgage, [or] lien." Minn. Stat. § 582.03, subd. 1 (2014). Once a party makes any payment due under Minn. Stat. § 582.03, subd. 1, any party redeeming from the sale must pay the additional costs incurred by whomever filed an affidavit under Minn. Stat. § 582.03, subd. 2 (2014).

Although Minn. Stat. § 582.03, subd. 2, does require a party to file the affidavit of additional costs prior to the expiration of the mortgagor's redemption period, there was nothing that precluded Prime from filing an affidavit before November 15, 2013. On September 18, 2012, Prime received notice of the PSB mortgage. Thus, from the date Prime acquired the certificate of sheriff's sale, Prime was able to file an additional-costs affidavit for any costs it advanced to redeem under the PSB mortgage. Once Prime filed an affidavit, any junior creditor seeking to redeem from Prime in the Prime foreclosure would also pay the amount Prime paid to redeem from the PSB foreclosure.[5]

Second, Prime could have availed itself of Minn. Stat. § 580.28 (2014). Section 580.28 provides various avenues by which parties involved in a foreclosure action priority dispute may protect their redemption rights if the redemption period is set to

---

[5] Minn. Stat. § 581.10 (2014), the foreclosure-by-action redemption statute, incorporates Minn. Stat. § 580.24 as the method for redeeming.

expire before final judgment in the underlying proceeding. By invoking Minn. Stat. § 580.28 prior to the expiration of its time for redemption, Prime could have preserved its redemption rights. In sum, there are no allegations of illegal actions by respondents, and we will not grant equitable relief to undo a party's deliberate, albeit mistaken, decision to attempt to redeem as a creditor when adequate legal remedies existed to protects its interests.

Because appellant did not redeem from the sheriff's sale foreclosing the senior mortgage during the proper timeframe, the district court did not err in concluding that appellant's right to redeem the subject property was extinguished and that its certificate of redemption is void.

**Affirmed.**